# "PROTECTIVE PETITION"
## (Mena v. Long(9th Cir. 2016)813 F.3d 907, 910)

Israel Gutierrez Zamora
NAME

BM-2266
PRISON IDENTIFICATION/BOOKING NO.

CSATF/SP B1-06, P.O. Box 5248
ADDRESS OR PLACE OF CONFINEMENT

Corcoran, California 93212

Note: It is your responsibility to notify the Clerk of Court in writing of any change of address. If represented by an attorney, provide his name, address, telephone and facsimile numbers, and e-mail address.



FILED
CLERK, U.S. DISTRICT COURT

JUL 3 - 2023

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Israel Gutierrez Zamora
FULL NAME (Include name under which you were convicted)

Petitioner,

v.

Bryan D. Phillips, Warden
NAME OF WARDEN, SUPERINTENDENT, JAILOR OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER

Respondent.

CASE NUMBER:
SA-CV 23-1199-FLA (MAA)
To be supplied by the Clerk of the United States District Court

☐ _____ AMENDED

PETITION FOR WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY
28 U.S.C. § 2254

PLACE/COUNTY OF CONVICTION **ORANGE COUNTY**
PREVIOUSLY FILED, RELATED CASES IN THIS DISTRICT COURT
(List by case number)
CV _____
CV _____

## INSTRUCTIONS - PLEASE READ CAREFULLY

1. To use this form, you must be a person who either is currently serving a sentence under a judgment against you in a California state court, or will be serving a sentence in the future under a judgment against you in a California state court. You are asking for relief from the conviction and/or the sentence. This form is your petition for relief.

2. In this petition, you may challenge the judgment entered by only one California state court. If you want to challenge the judgment entered by a different California state court, you must file a separate petition.

3. Make sure the form is typed or neatly handwritten. You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

4. Answer all the questions. You do not need to cite case law, but you do need to state the federal legal theory and operative facts in support of each ground. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a legal brief or arguments, you may attach a separate memorandum.

5. You must include in this petition all the grounds for relief from the conviction and/or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

6. You must pay a fee of $5.00. If the fee is paid, your petition will be filed. If you cannot afford the fee, you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out and sign the declaration of the last two pages of the form. Also, you must have an authorized officer at the penal institution complete the certificate as to the amount of money and securities on deposit to your credit in any account at the institution. If your prison account exceeds $25.00, you must pay the filing fee.

7. When you have completed the form, send the original and two copies to the following address:

Clerk of the United States District Court for the Central District of California
United States Courthouse
ATTN: Intake/Docket Section
312 North Spring Street
Los Angeles, California 90012

PLEASE COMPLETE THE FOLLOWING: (*Check appropriate number*)

This petition concerns:
1. ☒ a conviction and/or sentence.
2. ☐ prison discipline.
3. ☐ a parole problem.
4. ☐ other.

## PETITION

1. Venue

   a. Place of detention  CSATF/SP Corcoran, P.O. Box 5248, Corcoran, CA 93212

   b. Place of conviction and sentence  Orange County, Superior Court, State of California
      Judge Michael A. Leversen, 700 Civic Center Drive West, Santa Ana, CA 92701

2. Conviction on which the petition is based (*a separate petition must be filed for each conviction being attacked*).

   a. Nature of offenses involved (*include all counts*):  Counts: (1) attempted kidnap; (2) Assault w/
      semiautomatic; (4) Nonpremeditated attempted murder; (5) kidnaping; (6) Assault
      w/firearm; (7) Shooting at Occupied Vehicle; (8) Criminal Threats; (9) Dissuade

   b. Penal or other code section or sections:  Counts: (1) §664/207, (2) §245; (4) §664/187; (5)
      § 207; (6) §245; (7) §246; (8) §422; (9) § 136 1(c)

   c. Case number:  16CF1903

   d. Date of conviction:  April 5, 2017

   e. Date of sentence:  January 5, 2018

   f. Length of sentence on each count:  Original: 98 years to life; modified: 64 yrs & 4 months
      to life in state prison (three strikes)

   g. Plea (*check one*):

      ☒ Not guilty

      ☐ Guilty

      ☐ Nolo contendere

   h. Kind of trial (*check one*):

      ☒ Jury

      ☐ Judge only

3. Did you appeal to the California Court of Appeal from the judgment of conviction?    ☒ Yes  ☐ No

   If so, give the following information for your appeal (*and attach a copy of the Court of Appeal decision if available*):

   a. Case number:  G055827, unpublished on December 20, 2019 (remanded); G061537

   b. Grounds raised (*list each*):   unpublished on January 26, 2023 (after remand)

      (1) Trial Court Absued its Discretion by Denying access to juror to investigate...
          misconduct [CCP 237]; (remanded)

(2) _____
(3) _____
(4) _____
(5) _____

c. Date of decision:    December 20, 2019 and after remand March 30, 2022    (#S273299)

d. Result    remanded to conduct a CCP 237 hearing _____

_____

4. If you did appeal, did you also file a Petition for Review with the California Supreme Court of the Court of Appeal
   decision?   ☒ Yes   ☐ No

   If so give the following information (and attach copies of the Petition for Review and the Supreme Court ruling if available):

   a. Case number:  S273299; 2022 Cal. LEXIS 1793 _____

   b. Grounds raised (list each):

      (1) Whether trial Court erred in Refusing to Release jury information
      (2) Whether trial court erred in finding a lack of "good cause" to release info...
      (3) _____
      (4) _____
      (5) _____
      (6) _____

   c. Date of decision:  March 30, 2022 _____

   d. Result    Petition for Review denied (2022 Cal. LEXIS 1793) _____

   _____

5. If you did not appeal:

   a. State your reasons   N/A _____

   _____

   _____

   _____

   b. Did you seek permission to file a late appeal?    ☐ Yes   ☐ No

6. Have you previously filed any habeas petitions in any state court with respect to this judgment of conviction?
   ☐ Yes   ☒ No   * (Preparing to File a Habeas Petition in The Superior Court)

   If so, give the following information for each such petition (use additional pages if necessary, and attach copies of the petitions and the
   rulings on the petitions if available):

   a. (1) Name of court: _____

      (2) Case number: _____

      (3) Date filed (or if mailed, the date the petition was turned over to the prison authorities for mailing): _____

(4) Grounds raised *(list each)*:

    (a) _____

    (b) _____

    (c) _____

    (d) _____

    (e) _____

    (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

b.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

    (5) Date of decision: _____

    (6) Result _____

_____

    (7) Was an evidentiary hearing held?    ☐ Yes  ☐ No

c.  (1) Name of court: _____

    (2) Case number: _____

    (3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

    (4) Grounds raised *(list each)*:

        (a) _____

        (b) _____

        (c) _____

        (d) _____

        (e) _____

        (f) _____

(5) Date of decision:

(6) Result

(7) Was an evidentiary hearing held?    ☐ Yes ☐ No

7. Did you file a petition for certiorari in the United States Supreme Court?    ☐ Yes    ☒ No

If yes, answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

8. For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than five grounds. Summarize briefly the facts supporting each ground. For example, if you are claiming ineffective assistance of counsel, you must state facts specifically setting forth what your attorney did or failed to do.

CAUTION:    *Exhaustion Requirement*:  In order to proceed in federal court, you must ordinarily first exhaust your state court remedies with respect to each ground on which you are requesting relief from the federal court.  This means that, prior to seeking relief from the federal court, you first must present all of your grounds to the California Supreme Court.

a. Ground one: PETITIONER WAS DENIED HIS RIGHT TO A JURY TRIAL (JURY MISCONDUCT) (REMMER V. U.S.(1954)347 U.S. 227), COMPELLING REVERSAL OF CONVICTIONS. (6th Amnd)

(1) Supporting FACTS: During trial, two jurors were observed by Petitioner's relative, and one, while overlooking over her shoulder said: "LET'S FIND HIM GUILTY AND GO HOME," both were observed laughing. The trial court refused to allow further investigation, for lack of "good cause," and based on the strength of the evidence against Petitioner. Trial Court never presumed prejudice.

(2) Did you raise this claim on direct appeal to the California Court of Appeal?    ☒ Yes    ☒ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?    ☒ Yes    ☒ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?    ☐ Yes    ☐ No
       * This claim is being Federalized on Habeas

b. Ground two: (See Attached Page for Ground Two - Ineffective Assistance of Trial Counsel - STRICKLAND V. WASHINGTON(1984)466 U.S. 668, 687-688, pgs. 5a of 11)

(1) Supporting FACTS: (See Attached pg. 5a of 11...)

Federal Habeas Petition                                    Attached Page 5a of 11

GROUND TWO:

PETITIONER WAS DENIED DUE PROCESS, FAIR TRIAL AND EFFECTIVE
ASSISTANCE OF TRIAL COUNSEL RIGHTS, IN VIOLATION OF THE SIXTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION,
BECAUSE APPOINTED COUNSEL, JEREMY DOLNICK: (1) WAS UNDER A
CONFLICT OF INTEREST, REPRESENTING PETITIONER, REASONABLY
KNOWING OF HIS NOMINATION TO THE BENCH AND BECOMING A SUPERIOR
COURT JUDGE EVEN PRIOR TO JANUARY 5, 2018'S SENTENCING, (2)
FAILED TO CONDUCT A TIMELY INVESTIGATION OF THE CASE DESPITE
HAVING REASONABLE KNOWLEDGE PRIOR TO TRIAL, THAT PETITIONER WAS
AN ALCOHOLIC; DRUNK DURING THE ALLEGED DAYS OF THE INCIDENTS
AND THAT FLORES WAS AN ALCOHOLIC; DRUNK WITH A CHARACTER OF
EMBELLISHING, AS TO PRESENT A COHERENT DEFENSE OF VOLUNTARY
INTOXICATION (CALCRIM No. 3426), BUT (3) INSTEAD REQUESTED AND
PRESENTED AN UNSUPPORTED, QUITE ILLOGICAL TRUE-SELF-DEFENSE, TO
THE DETRIMENT OF PETITITONER, (4) WITHDREW FROM THE VOLUNTARY
INTOXICATION DEFENSE (CALCRIM No. 3426) WITHOUT ANY TACTICAL
REASON, (5) PREJUDICIALLY ALLOWING THE PROSECUTOR TO ARGUE TO
THE JURY THAT VOLUNTARY INTOXICATION DID NOT APPLY WITHOUT ANY
OBJECTION TO THE MISTATEMENT OF LAW, EFFECTIVELY ELIMINATING
JURY'S CONSIDERATION OF THE ELEMENTS OF SPECIFIC INTENT, (6)
CONCEDED PETITIONER'S PARTICIPATION IN THE CHARGED OFFENSES
DURING CLOSING ARGUMENT, WITHOUT HIS EXPRESSED CONSENT, (7)
WHILE FAILING TO MAKE REASONABLE ARGUMENTS BASED ON CALCRIM No.
358, FOR THE JURY TO CONSIDER CAUTIOUSLY, ALL OF THE ALLEGED
OUT-OF-COURT STATEMENTS BY PETITIONER, BECAUSE THEY WERE NOT
WRITTEN NOR RECORDED, (8)  FAILED TO OBJECT AT TRIAL TO: (a)
IRRELEVANT EVIDENCE OF, REFERENCES TO, THE MEXICAN CARTELS,
WHERE PETITIONER HUNG - AROUND (i.e., BARS, CASINOS, AND
RESTAURANTS), EXPLAINING WHY POLICE DID NOT GO TO FIND
PETITIONER, INDIRECTLY ALLOWING THE CONTINUOUS ATTACKS ON
FLORES, NOR DID DOLNICK MOVE FOR A MISTRIAL, (b) TO HEARSAY
FROM NONTESTIFYING WITNESSES, THAT PETITIONER WAS GETTING A
WEAPON, PLYER, SCREWDRIVER, OR FIREARM, (c) THE ADMISSION
OF THE UNDULY SUGGESTIVE SIX-PACK IDENTIFICATION, WHILE HE
FAILED TO REQUEST A (Evans) LIVE LINEUP PRIOR TO TRIAL, (d)
JURY INSTRUCTIONS GIVEN (CALCRIM NOs.# 315 and 359) THAT MISLED
JURORS (315-On Certainty of Witness's Identification; 359-
That Petitioner's Out-of-Court Statements Alone Prove his
Identity), WHILE FAILING TO REQUEST CLARIFICATION. (9)
AND THE CUMULATIVE EFFECT OF THE ERRORS ASSERTED DEPRIVED HIM
OF HIS RIGHTS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND A
FAIR TRIAL. (6th and 14th AMENDMENTS TO THE UNITED STATES
CONSTITUTION; Strickland v. Washington(1986)466 U.S. 668;
Parle v. Runnels(9th Cir. 2007)505 F.3d 922, 927-928 ["Holding
where the combined effect of individual harmless-errors renders
a criminal defense 'far less persuasive that it might otherwise
have been,' the resulting conviction violates Due Process."].)
HABEAS RELIEF MUST BE GRANTED, WITH DIRECTIONS TO TRY PETITIONER
WITHIN A TIME FRAME PRESCRIBED BY THIS COURT, OR RELEASE HIM.

I. Factual Statements in Support:

Honorable Jeremy D. Dolnick, on December 17, 2022, was appointed to the

Orange County Superior Court Bench, by Former Governor, Jerry Brown. Judge Dolnick
yet, on January 5, 2018, appeared to represent during the critical strike and
sentencing hearing, which resulted in the imposition of 97 years to life. However,
Petitioner was not aware that Judge Dolnick ("Dolnick" hereinafter) was neither
nominated to the Bench or was appointed, during his representation of this case,
and sentencing. Dolnick did not seek a waiver (as prescribed by the Rules of
Professional Conduct, California) from Petitioner. Nor did Petitioner consent to
such conflicted representation (dual obligations to Petitioner and to the Public
and the State of California - Orange County). This is a "structural error."

[A]fter months of attempting to get Dolnick's "defense case file," Petitioner
got most of it, on April 2023, through Alternate Public Defender, Mr. Randy Ladisky.
Petitioner, who is a Mexican National, and unable to retain his attorney for post-
conviction representation, sought the help of inmates to read, explain the records,
prepare and file this habeas petition, which is verified under the penalty of
perjury. The defense case file was mailed in three manila envelopes, and included
work-product from investigator Lubna Debbini, outlining the late engagement into
the investigation of the case (August 2016), which resulted in the lost of video
surveillance that would have shown both Flores and Petitioner, among others,
drinking, partying and gambling in different locations and times, even after
the alleged incidents in June, August, and September 2015. Jurors could infer
that Flores and Petitioner, were generally drunk all the time, and that Flores
was not scare, nor fearful of Petitioner. Petitioner, a week after his arrest,
asked his appointed counsel to get those videos, and provided him with the exact
locations. Not until after the September 2016 preliminary hearing, that Dolnick
provided investigator Debbini, to conduct such investigations, as reflected by
her notes. Debbini learned that each of the casinos, restaurants, had erased their
videos after 30 to 90 days. Petitioner had been arrested on February 8, 2016,[1] and

1. Officer Wharton, M. sought a warrant for Petitioner's blood test result,
which revealed that Petitioner's blood-alcohol was 0.175%, after a collision near
McFadden/Standard Street.

a week after his arraingment, told his appointed counsel, that he had been with Flores in all the mentioned locations, drinking, partying, gambling,  and that he should get the videos to show it to the judge. According to the "defense case file," every witness, pertaining to Flores's case, told police and investigators, that Petitioner was always drinking, and partying, including Flores. Drinking the day of the mutual fight on June, drinking August 21, with friends, when he allegedly shot at Flores, and Flores crashed his Honda and left on foot. As for the alleged incident on September 15, 2015, where Petitioner allegedly showed up at Flores's home, threatening him not to report him to the police (Count No. 9). Even Patricia Flores described both her husband and Petitioner, as liking to drink, partying, gambolling. Petitioner admitted to Dolnick that he was drinking alot, and also Dolnick should get witnesses that know about the drunken fight. Petitioner was adamant that he was just with Flores prior to his arrest ("Februry 8, 2016") at the Casinos, to get videos that will support his claim of innocence. Again. it was until August 2016, that the investigation started. By then, all videos had been purged by the Casinos, Restaurants. [A]t trial, Andrew Madrigal, witnessed the Dogde vehicle being driven, eractically, weaving through traffic without caring, darting across intersections, tires screeching, swerving, driving fast; and braking fast, making a u-turn next to his towtruck. (3 RT 304, 310-311, 322.) Thus, describing a person driving drunk. [A]fter all, both (Flores and Zamora) were seen drinking at the shop before they fought.

None of the work-product in the defense case file indicates any defense. It indicates multiple interviews, looking for consistency, accuracy of the witnesses's account. From the very beginning of the case, but after the September 2016 prelimi-nary hearing, Dolnick rejected Petitioner's request to testify, because of his extensive criminal record of conviction. Hence, it is illogical for Dolnick to be preparing a true-self-defense, absent objective and subjective evidence from Petitioner, himself. No other witness cameforth, except the owner of the shop.

Voluntary intoxication (Penal Code §29.4(b)) and habits of an accused with respect to his consumption of intoxicating liquor and the effect thereof as respects his acts while in the state of voluntary intoxication are fully covered by this section. (People v. Ross(1939)34 Cal.App.2d 574,) [B]ut because a trial court has no sua-sponte duty to give said instructions (People v. Saille(1991)54 Cal.3d 1103, 1119) as a "pinpoint-instruction." It must be requested by defense counsel.(Id.) Here, Dolnick did in fact, requested "pinpoint" instructions and a self-defense and a mutual combat instructions, to support his theory of the defense. (RT 671-673 ["Requesting and granted the giving - without objection by the prosecution, CALCRIM NOs.# 3426 (Voluntary Intoxication), 3470 (Self-Defense), 3471 (Mutual Combat), and 3472 (Contrived).) However, the next day, going through the jury instructions, the trial court was going through them in order. (5RT 677.) Once the parties went through the instructions, the trial court asked Dolnick if he had look through the rest, and acknowledged to having all, including the mutual combat. (5RT 690-698.) The trial court asked the prosecution if he was going to give them to the court (CALCRIM NOs. 3426 (voluntary intoxication), 3470, 3471 modified), which the prosecution said "yes." (5RT 700-701.) Dolnick complained that he still did not have the paragraph in 3471, and again the prosecution asserted that he did not know how it got omitted, and that he would email it. (5RT 708-709.) However, Dolnick that he was good with the last packet of instructions. (5RT 710.) Then, the trial court proceeded to instruct the jury with the packet of jury instructions. (5RT 711-766.) The trial court, in fact, instructed on the self-defense; mutual combat instructions (5RT 755-759), but it never gave jurors CALCRIM No. 3426, on voluntary intoxication, which applied to the listed crimes (5RT 722-723) that required a specific intent element. Dolnick never requested it, nor objected to its omissions. Dolnick simply withdrew from the theory all together, as evinced from Dolnick's complete omission of the subject of voluntary intoxication during his closing argument, (5RT 807-847, 849-903) and how it required the jury to use

5e of 11

e evidence that Petitioner was regularly drunk, during the alleged offenses, and force the prosecution to prove beyond a reasonable doubt that the Petitioner, despite being in a drunken-state, he harbored the the specific intent to commit the listed offenses charged. [I]n fact, Dolnick's withdrawal from CALCRIM No. 3426, on voluntary instruction, allowed the prosecution to argue: "... intoxication is not a defense to this. You can't say, 'I was too drunk to know what was going on;' voluntary intoxication. I was so drunk that I couldn't even figure out what I was doing in the way that I couldn't even form the specific intent to do that. There is no evidence of that in this case. But it's not a defense to assault. It's not a defense to assault with a firearm and not a defense to assault with a deadly weapon." (5RT 771, 782.) Dolnick never objected to the prosecution's argument. Dolnick's silence on the subject, was reasonably interpreted as a concession, by the jurors.

As to the illogical self-defense theory. Even the trial court explained to him that there was no basis for it. (5RT 694-695.) Although the trial court had an obligation not to give instruction that are not supported by the evidence (People v. Satchell(1971)6 Cal.3d 28, 33 n.10, overruled on other grounds in People v. Flood (1998)18 Cal.4th 470, 490 n. 12 ["Courts must refrain from instructing on law unrelated to the evidence at trial as it confuses the jury."]), it gave Dolnick what he wanted. Any error would constitute "an invited error by counsel," and here, it constitutes ineffective assistance of counsel.

To make matters worst, Dolnick, without prior consent from Petitioner (knowing from Petitioner protestations - noted in the defense case file that Flores had fabricated his stories) admitted that: (1) petitioner did fight Flores, (2) prosecution has to prove Zamora was not acting in lawful self-defense, as it applies to Counts 2, 3, 4, and 6 (5RT 839-842, 849-851), and conceded that petitioner drove away (6RT 872) in the very car that Madrigal identified being next to his towtruck. (3RT 311-313, 319.) (McCoy v. Louisiana(2018)_U.S._, 138 S.Ct. 1508,

.510-1512 ["structural error, for counsel to concede defendant's guilt over his objection. McCoy claimed he was innocent, thus counsel usurped defendant's sole authority to make such decision"]; People v. Eddy(2019)33 Cal.App.5th 472 ["knowing that defendant did not agree with the strategy, counsel conceded his guilt during closing argument, thus compelling a reversal."].)

Moreover, Dolnick never argued to the jury that it should look with cautious, all of Flores's claims that Petitioner made several statements - that were neither written nor recorded - to him, including the threats to kill him, not to go to the police, get in the car, among other prejudicial out-of-court statements, that would have been lawful under CALCRIM No. 358. Nor did Dolnick seek clarification of CALCRIM NOs. 315 nor 359, which have the effect to mislead the jury. Courts have previously found that CALCRIM NO. 315's factor, on the "certainty of the witness's identification," could be misleading. The California Supreme Court recommended that CALCRIM No. 315 be modified according. However, no such modification was requested by Dolnick. (People v. Lemcke(2021)11 Cal.5th 644 ["factor in CALCRIM No. 315 might tend to mislead jurors, trial courts must omit it"].) The Sixth District Court of Appeal held that CALCRIM No. 359 is deficient to the extent that it lends itself to an interpretation that a defendant may be convicted on the basis of extrajudicial statements alone that the defendant committed the crime. (People v. Rivas(2013)214 Cal.App.4th 1410.) Dolnick never made any efforts to seek these instructions' clarification to avoid any possible confusion, especially where the majority of the proof of the alleged crimes come from the extrajudicial statements (allegedly) made by Petitioner to Flores.

Another critical point in the case was when the prosecution argued to the jury that the police botched their case and allowed Flores to be continuedly be attacked by Petitioner from June through September 2015. That the police was spread thin. That Officer Guidry didn't have the resources, he was overworked. He was outgunned. This

place (Hector's Mariscos) has a history of being some kind of <u>Cartel</u> hangout. <u>And</u> there's defendant's vehicle again there. Police just let him get away. The police didn't even park next to Hector's Mariscos. They hung back, they were so outgunned and so scare.... Defendant takes Flores to Hector's Marisco, pulls him close, shows him his gun and says, I'm going to kill you...." (5RT 800-803.) <u>Not once</u> did Dolnick object to such prejudicial comments, <u>nor</u> moved for a mistrial. This was irrelevant.

And the record demonstrates that associating Petitioner with Mexican Cartels had a serious impact, and denied him a fair trial. During remand, for disclosure of jurors information to investigate the misconduct, the trial court stated that out of the 12 jurors, <u>only</u> six wrote back, and wrote back with <u>objections</u>, because they were scared. It's no surprise regular civilians would be afraid. The prosecution had just told them that Petitioner is a regular at the Cartel hangout, and that even the police (who carry guns, vests, protective gear) are scared and tney let him get away with the crime.

Dolnick, also allowed by not objecting, double hearsay, that Flores was told at the shop, "leave, he's going to his car to get a weapon or gun, plyers." No one identified the speaker. It was inadmissible, and irrelevant, and quite prejudicial. The June 2015 incident at the shop, was open to multiple reasonable interpretations. [Y]et, Dolnick also allowed the six-pack identification by Andrew Madrigal to be admitted, without objection, nor prior motion to exclude it, as it was unduly and suggestively made by the police. Thus tainting the in-court identification. [B]ut, Dolnick had an opportunity to motion for a live lineup prior to trial, as to exclude Petitioner, based on Madrigal earlier description of the size of the culprit. Based on the review of the "defense case file," Dolnick never made any notations for why he opted not to exclude the six-pack nor request for a live lineup. (People v. Blomdahl(1993)16 Cal.App.4th 1242, 1248 ["Counsel who forgoes a lineup request should insert a memo in the file, detailing why hte decision was a tactical one."].)

[E]ven if each instance, may be deemed as harmless error by Dolnick, the

reviewing court must accumulate them, as when combined, they rendered his defense far less persuasive, ultimately denying him a fair trial, with an attorney that was not compromised with the dual obligation to the public (as a judge) and to represent Petitioner effectively; a petitioner who was associated by the prosecution, as hanging around at a Cartel's restaurant.

Petitioner, asserts that the foregoing is true and correct to the best of his ability, except as to matters that are based on information and belief, and as to those matters, Petitioner believes them to be true. This is executed this June 27, 2023, at Corcoran, California. This Petition is being served through the "prison-mailbox" rule, this date, as signed by prison staff for forwarding.[2]

Respectfully Submitted,

Israel Gutierrez Zamora,
Petitioner,
In Prorpia Persona

Exhibits are Consistent with the
Appellate Record.

---

**2.** Petitioner will be filing a state habeas petition. Currently he is in Pro Se, and believes based on the Ninth Circuit Precedent, this Court has discretion to stay and abeyance these proceedings pending the exhaustion of all state remedies. (See Dixon v. Bakers, 847 F.3d 714, 719-720 (9th Cir. 2017).) Petitioner will move for permission to amend the federal habeas petition, based on any new evidence he obtains in the state court proceedings, and whatever the law may permit.

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?　☐ Yes　☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?　☐ Yes　☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?　☐ Yes　☐ No

c.　Ground three: _____

(1) Supporting FACTS: _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?　☐ Yes　☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?　☐ Yes　☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?　☐ Yes　☐ No

d.　Ground four: _____

(1) Supporting FACTS: _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?　☐ Yes　☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?　☐ Yes　☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?　☐ Yes　☐ No

e.　Ground five: _____

(1) Supporting FACTS: _____

_____

_____

_____

(2) Did you raise this claim on direct appeal to the California Court of Appeal?　☐ Yes　☐ No

(3) Did you raise this claim in a Petition for Review to the California Supreme Court?  ☐ Yes  ☐ No

(4) Did you raise this claim in a habeas petition to the California Supreme Court?  ☐ Yes  ☐ No

9.  If any of the grounds listed in paragraph 7 were not previously presented to the California Supreme Court, state briefly which grounds were not presented, and give your reasons: <u>Ground 1 was not Federalized at</u> <u>the time of Review was denied March 30, 2022. However, after getting discovery/</u> <u>defense case file April 2023, This petition was prepare, and another is being</u> <u>prepared to be filed in the Superior Court. This is a "PROTECTIVE PETITION."</u>

10. Have you previously filed any habeas petitions in any federal court with respect to this judgment of conviction?

☐ Yes  ☒ No

If so, give the following information for each such petition *(use additional pages if necessary, and attach copies of the petitions and the rulings on the petitions if available):*

a.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing):* _____

(4) Grounds raised *(list each):*

  (a) _____

  (b) _____

  (c) _____

  (d) _____

  (e) _____

  (f) _____

(5) Date of decision: _____

(6) Result _____

_____

(7) Was an evidentiary hearing held?  ☐ Yes ☐ No

b.  (1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing):* _____

(4) Grounds raised *(list each):*

  (a) _____

  (b) _____

  (c) _____

  (d) _____

  (e) _____

  (f) _____

(5) Date of decision: _____

(6) Result _____

(7) Was an evidentiary hearing held?        ☐ Yes ☐ No

11. Do you have any petitions now pending (i.e., filed but not yet decided) in any state or federal court with respect to this judgment of conviction?        ☐ Yes    ☒ No

If so, give the following information *(and attach a copy of the petition if available)*:

(1) Name of court: _____

(2) Case number: _____

(3) Date filed *(or if mailed, the date the petition was turned over to the prison authorities for mailing)*: _____

(4) Grounds raised *(list each)*:

(a) _____

(b) _____

(c) _____

(d) _____

(e) _____

(f) _____

12. Are you presently represented by counsel?        ☐ Yes  ☒ No

If so, provide name, address and telephone number:

_____

_____

_____

WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
*Signature of Attorney (if any)*

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on  ___June 27, 2023___          _____  #BM-2266
                       *Date*                             *Signature of Petitioner*

" A "

① APPELLANT OPENING BRIEF

③ UNPUBLISHED
OPINIONS

JANUARY 14, 2022

And
JANUARY 26, 2023

# APPENDIX

" A "

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br>     Plaintiff and Respondent, <br><br> vs. <br><br> ISRAEL GUTIERREZ ZAMORA, <br>     Defendant and Appellant. | Court of Appeal <br> No. G055827 <br><br> Superior Court Case No. <br> 16CF1903 |

**APPEAL FROM THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE**

Honorable Julian W. Bailey, Judge

---

**APPELLANT'S OPENING BRIEF**

---

Cynthia M. Jones (SBN 226958)

Avatar Legal, PC
19363 Willamette Drive #194
West Linn, OR 97068
(858) 793-9800

Attorney for Defendant and Appellant
By appointment of the Court of Appeal under the Appellate
Defenders, Inc., independent case program.

# TABLE OF CONTENTS

STATEMENT OF APPEALABILITY ................................................................. 7

STATEMENT OF THE CASE ........................................................................... 8

STATEMENT OF THE FACTS ....................................................................... 11

1.   Initial incident on June 2, 2015 .......................................................... 11

2.   Incident on August 21, 2015 ............................................................... 14

3.   Incident on September 15, 2015 ......................................................... 18

ARGUMENT ................................................................................................. 19

I.   THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING
     APPELLANT'S PETITION FOR RELEASE OF JUROR
     IDENTIFYING INFORMATION ................................................................ 19

     A. Introduction ...................................................................................... 19

     B. Standard of Review ............................................................................ 21

     C. The Trial Court Was Required to Set a Hearing on
        Appellant's Petition If the Petition Established a Prima Facie
        Showing of Good Cause Unless Finding a Compelling
        Interest Against Disclosure ............................................................... 22

     D. Appellant's Motion Established a Prima Facie Showing of
        Good Cause for Release of the Juror Identifying
        Information And There Was No Showing of a Compelling
        Interest Against Disclosure ............................................................... 24

     E. Because the Motion Established a Prima Facie Showing of
        Good Cause for Release of the Juror Identifying
        Information The Trial Court Should Have Set a Hearing on
        the Motion ........................................................................................ 25

2

A. Introduction .......................................................................... 16

B. The argument was presented in appellant's briefing .................... 16

III.    CONCLUSION ................................................................................... 19

CERTIFICATION OF WORD COUNT ................................................ 20

COURT OF APPEAL OPINION................................................ APPENDIX "A"

ORDER MODIFYING OPINION ................................................ APPENDIX "B"

PROOF OF SERVICE ................................................................................ 36

## TABLE OF AUTHORITIES

CASES                                                          PAGE(S)

*DeHoyos v. Superior Court* (2020) 50 Cal.App.5th 71 ...........................................

*Kamakana v. City & County of Honolulu* (2006) 447 F.3d 1172 .............................

*Townsel v. Superior Court* (1999) 20 Cal.4th 1084....................................................


STATUTES

Code Civ. Proc. § 206................................................................................................

Code Civ. Proc. § 237................................................................................................


LEGISLATIVE MATERIALS

1992 Stats. Ch. 971, §§ 2, 3......................................................................................

1993 Stats. Ch. 632, § 1............................................................................................

1995 Stats. Ch. 508..................................................................................................

1996 Stats. Ch. 636, § 1............................................................................................

Bill Analysis, Ass. Floor, Sen. Bill No. 2123 (1995-1996 Reg. Sess.), as
amended June 24, 1996............................................................................................

4

SUPREME COURT NO. _____

<table>
<tr><td>THE PEOPLE OF THE STATE OF<br>CALIFORNIA,<br><br>     Plaintiff and Respondent,<br><br>     vs.<br><br>ISRAEL GUTIERREZ ZAMORA,<br><br>     Defendant and Appellant.</td><td>Court of Appeal<br>No. G059259<br><br>Superior Court Case No.<br>16CF1903</td></tr>
</table>

## APPEAL FROM THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

Honorable Michael A. Leversen, Judge

_____

## APPELLANT'S PETITION FOR REVIEW FROM THE PUBLISHED OPINION OF DIVISION THREE OF THE FOURTH DISTRICT COURT OF APPEAL FILED ON JANUARY 14, 2022

_____

TO THE HONORABLE TANI CANTIL-SAKAUYE, CHIEF JUSTICE, AND TO THE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA.

This petition for review follows the published decision of the Court of Appeal, Fourth Appellate District, Division Three, filed on January 14, 2022. A copy of the opinion is attached to this petition as Appendix A. Appellant filed a petition for rehearing on January 31, 2022. The court denied the rehearing but modified the opinion on

5

February 14, 2022.  The order modifying the opinion is attached as Appendix B.

## ISSUES PRESENTED FOR REVIEW

I.      Did the trial court err in denying appellant's petition pursuant to California Code of Civil Procedure for release of juror information as to those jurors who were notified of the petition and did not protest release of their information?

II.     Assuming arguendo the trial court may withhold juror information of non-objecting jurors, did the court err by applying an incorrect standard of "good cause" in this case?

## NECESSITY FOR REVIEW

This issue presents an important question of law of statewide importance and constitutional significance.  Appellant contends the Court of Appeal's interpretation of Code of Civil Procedure section 237 diverges from prior law and that it undercuts a defendant's ability to investigate potential juror bias.  Review is necessary to clarify an important question of law.  (Cal. Rules of Court, rule 8.500 (b)(1).)

## STATEMENT OF THE CASE & FACTS

This is the second appeal in Superior Court Case Number 16CF1903.  Appellant Israel Zamora ("appellant") adopts the factual

history set forth in the "Facts" section of the opinion for purposes of this petition only.  (Opn. 3-6.)[1]

## ARGUMENT

### I.

### APPELLANT REQUESTS REVIEW TO DETERMINE WHETHER A TRIAL COURT ERRS IN REFUSING TO RELEASE JUROR INFORMATION OF JURORS WHO HAVE NOT OBJECTED TO AN APPELLANT'S PETITION FILED PURSUANT TO CIVIL CODE OF PROCEDURE SECTION 237.

### A.    Introduction.

This is a second appeal after a remand.  At the close of his trial, appellant filed a petition for release of juror information pursuant to Code of Civil Procedure[2] section 237.[3]  The trial court denied it as untimely.  In his first appeal, appellant argued the trial court had erred in dismissing the petition as untimely.  The Court of

---

[1] References to the record are as follows: "Opn." means the Court of Appeal Opinion; RT means the Reporter's Transcript; CT means the Clerk's Transcript; AOB means appellant's opening brief; RB means respondent's brief; ARB means appellant's reply brief; Rhg. means appellant's petition for rehearing.

[2] Hereinafter "CCP."

[3] During the trial, appellant's sister overheard two jurors discussing his case in the hallway. The conversation occurred before the trial had reached the deliberation phase.  One juror said to the other a statement along the lines of "let's just find him guilty so we can get this over with." (RT 16.)  Both jurors laughed.  (RT 16.)

Appeal agreed with appellant and remanded the matter for a new
hearing.

On remand, the trial court found appellant had made a prima
facie case for release of juror information and sent notices to the
jurors to determine whether they objected to release. Some, but not
all, jurors protested release of their information. The trial court
denied release of any juror's information.

Appellant appealed, contending this was error. CCP section
237 requires the court to release information of those jurors who did
not protest release.

The Court of Appeal disagreed, interpreting CCP section 237
as giving the court authority to deny appellant's entire petition upon
the protest of even a single juror. (Opn. 2.)

Appellant requests review on the proper interpretation of
CCP section 237. If the matter is not reviewed, the Court of Appeal's
published opinion substantially limits a criminal defendant's ability
to investigate potential juror bias. This is an important question of
law with impact far beyond appellant's particular case.

**B.    This case turns on the extent of the authority granted by CCP
section 237 to a trial court to deny appellant's petition with
respect to non-protesting jurors.**

CCP section 237 requires the personal juror identification
information of jurors in criminal jury proceedings be sealed after
verdict. (CCP, § 237, subd. (a)(2).) However, it also permits any
person to petition the court for access to the records for good cause.

8

(CCP, § 237, subd. (b).)  After a petitioner submits a petition
supporting a prima facie showing of good cause and no compelling
interest against disclosure, the court must set the matter for a
hearing.  (CCP, § 237, subd. (b).)  The court must also send notice to
the jurors, letting them know they may oppose the release of their
information.  (CCP, § 237, subd. (c).)  The jurors are permitted to
oppose the granting of the petition in writing or by appearing in
person, in writing or by telephone.  (CCP, § 237, subd. (c).)

"After the hearing, the records shall be made available as
requested in the petition, unless a former juror's protest to the
granting of the petition is sustained.  The court shall sustain the
protest of the former juror if, in the discretion of the court, the
petitioner fails to show good cause, the record establishes the
presence of a compelling interest against disclosure as defined in
subdivision (b), or the juror is unwilling to be contacted by the
petitioner."  (CCP, § 237, subd. (d).)

The plain language of the statute is clear that if no juror
objects, a defendant is entitled to release of juror information.  When
a juror objects, the court decides in its discretion whether to release
that juror's information.  But what is apparently not clear,[4] is what

[4] Appellant contended the plain language of the statute meant non-
objecting juror's information must be released and that discretion to
deny the petition only existed with respect to objecting juror's
information.  (AOB 14.)  In the petition for rehearing, appellant
argued that if the plain language did not require release, then it must
be considered ambiguous, requiring reference to other tools for

9

happens where some, but not all, jurors object.  Is the defendant entitled to the release of non-objecting jurors?  Or does the court have discretion to withhold the information of non-objecting jurors based on the objection of another juror?

**C.    This question warrants review in the instant case to protect the right to a fair trial by ensuring criminal defendants can investigate potential juror bias.**

Appellant requests review for two reasons.  First, the decision represents a departure from prior case law regarding the trial court's role in gatekeeping access to juror information.  Second, the decision risks impeding defendants statewide from investigating potential juror bias, warranting review now rather than awaiting a different outcome in another case.

1.    This opinion is a departure from established law regarding the trial court's role in controlling access to juror information.

The Court of Appeal opinion appears to be the first case interpreting the current version of CCP section 237 with respect to a court's discretion to deny access to juror information where some but not all jurors object.  However, the current version of CCP section 237 did not arise in a vacuum.  The opinion represents a

_____

statutory interpretation, including legislative history and the need to avoid absurd results and safeguard the right to a fair trial.  (Rhg. 11-20.)  The Court of Appeal did not re-hear the case.

marked departure from previous decisions discussing a trial court's
obligations in deciding whether to release juror information.

Prior to enactment of CCP section 237, juror records were not
automatically sealed, but the trial court could still seal the
information on request. (See *Townsel v. Superior Court* (1999) 20
Cal.4th 1084, 1087; *DeHoyos v. Superior Court* (2020) 50 Cal.App.5th
71.) In addressing the trial court's inherent power prior to
enactment of CCP section 237, this court stated, ""In its 'gatekeeper'
role, the trial court's responsibility is to manage the initial contact
with the jurors to ascertain consent to be interviewed, not to
unilaterally prohibit all contact." (*Townsel v. Superior Court, supra*, 20
Cal.4th at p. 1097.) Thus, unless a juror had already communicated
an unwillingness to speak with the defendant's counsel, the court's
role is to determine ahead of time from the jurors whether or not any
wishes to speak to defense counsel. (*DeHoyos v. Superior Court,
supra*, 50 Cal.App.5th at p. 82.) The court abuses its discretion when
it refuses to allow contact with jurors who have not explicitly
refused to be contacted. (*Ibid.*)

The earliest version CCP section 237, simply codified the trial
court's inherent power to seal juror records upon request. (Former
CCP, §§ 206, subd. (e), 237, subd. (b) 1992 Stats. Ch. 971, §§ 2, 3.)
However, defendants had an automatic right to access upon request
for purposes of developing issues on appeal or other lawful
purposes. (former § 206, subd. (e); 1992 Stats. Ch. 971, § 2.) This

11

access had to be granted but was subject to limitations on sharing:
"The court may limit access to records sealed under subdivision (b)
to the defendant, the defendant's counsel, or the defendant's
investigator for the purpose of developing issues of appeal or for
any other lawful purpose. The court may require agreement that the
defendant, defendant's counsel, or defendant's investigator not
divulge jurors' identities or identifying information to others."
(former § 237, subd. (c); 1992 Stats. Ch. 971, § 3.)

The first amendment to the statute (in 1993) required courts to
notify the jury of their right to request their information be sealed
and broadened the public's right to request access. (Former § 237,
subd. (b), (c); 1993 Stats. Ch. 632, § 2.)  Defendants continued to have
mandatory access to the information to pursue issues on appeal and
for other lawful purposes. (former § 206, subd. (f); 1993 Stats. Ch.
632, § 1.)

In 1995, the statutes were amended again.  Under this version,
juror information was automatically sealed at the end of a criminal
trial without need for a request. (former § 237, subd. (a)(2).)
Additionally, defendants were no longer entitled to release of juror
information on request, but were also subject to notice to jurors and
a hearing if any juror protested release. (former § 206, subd. (f), 1995
Stats. Ch. 508.)

Section 237 was most recently amended in 1996.  This was a
clarifying amendment regarding what constituted "juror

12

information," due to confusion and inconsistent treatment in the courts. (Bill Analysis, Ass. Floor, Sen. Bill No. 2123 (1995-1996 Reg. Sess.), as amended June 24, 1996, "Background.") The amendment noted this confusion "has caused problems when the appellate counsel tries to get a copy of the record for developing issues on appeal." (Bill Analysis, Ass. Floor, Sen. Bill No. 2123 (1995-1996 Reg. Sess.), as amended June 24, 1996, "Background.") The clarifying language ensured that "juror information" referred only to "jurors' names, addresses, and telephone numbers." (§ 206, subd. (f); 1996 Stats. Ch. 636, § 1.)

Nothing in the initial enactment or subsequent amendments of CCP section 237 indicate the trial court enjoys a greater gatekeeping function under section 237 than the inherent power defined by this court in *Townsel*. Yet the Court of Appeal opinion holds the trial court can unilaterally prohibit all contact with *non-objecting* jurors in sharp contrast to *Townsel's* reasoning.

The opinion's interpretation of CCP section 237 is a clear departure from prior law and warrants review.

2.     This issue is of statewide importance and would harm many defendants if this court does not grant review.

The opinion in this case will have a detrimental effect on defendants throughout the state who seek to investigate juror bias. The ability to investigate potential juror bias is an important interest that must be protected.

13

Orders to seal records are designed to balance the public's right of access to judicial records against a person's need for privacy. (See, e.g., *Kamakana v. City & County of Honolulu* (2006) 447 F.3d 1172, 1178-1179 [in deciding whether to seal a record court must balance public interest against the interests of the party who seeks to keep the record secret].)

In the case of sections 206 and 237, the interest being protected is that of a juror in a criminal trial to be shielded from improper harassment by a criminal defendant. That valid interest must, however, be balanced against a defendant's ability to ensure his trial was fair by investigating potential bias.

It is unclear how a single protesting juror can have standing or to block the release of the information of other jurors. A juror's personal right to be free from harassment after trial is not implicated where the defendant contacts *a different* juror.

The Court of Appeal's interpretation that permits one juror to veto the release of *other* jurors' information sets up a dangerous system that can undercut the defendant's ability to investigate juror misconduct. If a single juror were permitted to prevent access to other jurors, it would allow a juror who had committed misconduct to shield him or herself from investigation simply by protesting and voicing concern about harassment, thereby preventing the defendant from contacting any juror who might provide information about the misconduct. This interpretation runs against the policy of

14

balancing a juror's right to be free from harassment with a
defendant's right to investigate juror misconduct.

Review is warranted in this case in order to protect the ability
of criminal defendants to investigate juror bias in future cases. The
current opinion gives trial courts the ability to deny access to every
juror who sat on a trial based solely on the protest of a single juror.
It is possible future defendants will be able to appeal those decisions
and receive a different ruling before a different Court of Appeal.
But if this court waits until there is a disagreeing opinion to review
the question, that delay will have undercut the ability of numerous
defendants to investigate juror bias. Such an approach will permit
harm to accrue.

First, many defendants who are denied access to juror
information may simply accept this opinion as the law and not
challenge it. Second, even for those hypothetical future cases where
the defendant does challenge a trial court's ruling and prevails on
appeal, it will cause harm. Appeals are not a quick process and by
the time the matter is sent back, jurors may be harder to locate and
their memories of what occurred during trial will have faded.

Of course, appellant has necessarily already suffered these
harms; there is no need to require other defendants to do the same.

As the interest at stake here is great, appellant respectfully
requests this court grant review in this case to determine whether

15

CCP section 237 required the trial court to release the juror
information of non-protesting jurors.

## II.

**APPELLANT REQUESTS THIS COURT GRANT
REVIEW TO CONSIDER APPELLANT'S
ARGUMENT THAT THE TRIAL COURT ERRED IN
FINDING A LACK OF GOOD CAUSE TO RELEASE
JURORS' INFORMATION.**

### A.    Introduction.

In addition to holding section 237 permits the court to deny
the entire petition as to all jurors based on only some jurors
protesting, the opinion also states "Zamora does not make the
additional argument that the court's rejection of his good cause
argument under section 237 was an abuse of discretion. We
consequently need not address that point." (Opn. 8.)

This is incorrect. Appellant did argue the court abused its
discretion in finding a lack of good cause. Therefore, appellant also
seeks review of this question.

### B.    The argument was presented in appellant's briefing.

In the opening brief, appellant contended that the court erred
in releasing non-protesting juror's information because release was
required because appellant had established a *prima facie* showing of
good cause based on a good faith belief juror misconduct had

16

occurred.  (AOB 14-15.)  The opening brief did not challenge the trial
court's decision to withhold the information of protesting jurors.

Respondent contended the trial court did not err because (a)
the court implicitly found all of the jurors had protested, even those
who had not responded (RB 16-17) and (b) appellant failed to
demonstrate good cause at the hearing, supporting the trial court's
decision.  (RB 13-16).  Respondent also contended that the trial court
could properly find that non-protesting jurors were actually
protesting jurors based on their failure to respond to the notice.  (RB
16-17.)

Appellant's reply included a section labeled "To the extent
that the court found appellant had failed to make a prima facie case
of good cause to warrant release of juror information, it was an
abuse of discretion that resulted from applying the wrong legal
standard."  (ARB 15.)

In the body of the reply, appellant argued that the trial court
erred by applying the wrong legal standard in determining whether
appellant had a made a showing of good cause.  (ARB 15-19.)
Specifically, "the trial court seemed to confuse the petitioner's
burden to establish good cause to release juror information with the
burden required to prove misconduct in a motion for new trial."
(ARB 15.)  "[T]he court's role was to determine whether there was
good cause to warrant release of information and to determine
whether any jurors were unwilling to speak with counsel.  The court

17

was not called upon to decide whether appellant had actually demonstrated that misconduct occurred." (ARB 15.)

Appellant discussed the case cited by respondent was not controlling and argued respondent had mischaracterized appellant's request as a "fishing expedition." (ARB 16-17.) The evidence presented by appellant supported a good faith belief that misconduct had occurred.

Appellant did not challenge the court's ruling as to the protesting jurors. However, this was not a concession that the trial court properly found a lack of good cause at the hearing. Rather, the trial court's ruling on good cause was not relevant on appeal because the statute also allowed the court to deny access solely on the ground that "the juror is unwilling to be contacted by the petitioner." (§ 237, subd. (d).)

In appellant's petition for rehearing, he asked the Court of Appeal to reconsider the issue in light of his prior briefing. (Rhg. 20-26.) The Court of Appeal did not address the arguments in the order modifying the opinion. (App. B.)

Appellant requests this court grant review to determine whether the trial court applied the correct legal standard in finding appellant had failed to establish good cause for his petition. As with the statutory meaning of CCP 237, this is a question of law of statewide importance that impacts the ability of criminal defendants

18

to investigate juror bias and determine whether they received a fair trial.

## III.

## CONCLUSION

For the reasons stated, the petition for review should be granted.

Date:  February 23, 2022                    Respectfully submitted,

Cynthia M. Jones

## CERTIFICATION OF WORD COUNT

I, Cynthia M. Jones, hereby certify, pursuant to California Rules of Court Rule 8.504(d)(1), that according to the computer program used to prepare this document, this brief contains 2,406 words not including the caption and tables.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 23rd day of February, 2022 in Clackamas County, Oregon.


Cynthia M. Jones

## PROOF OF SERVICE BY MAIL & ELECTRONIC MEANS

(Cal. Rules of Court, rules 1.21, 2.251(i)(1)(A)-(D), 8.50 & 8.71(f)(1)(A)-(D).)

*People v. Zamora*
Court of Appeal No. G059259
Superior Court No. 16CF1903

I, Cynthia M. Jones, declare that: I am over the age of 18 years and not a party to the case; my business address is 19363 Willamette Dr., #194, West Linn, OR 97068.

I caused to be served the following document(s):

### APPELLANT'S PETITION FOR REVIEW[1]

| | |
|---|---|
| Israel Gutierrez Zamora (#BM2266)<br>North Kern State Prison<br>A3 237 UP<br>PO Box 5000<br>Delano, CA 93216<br>(Appellant) | Orange County Superior Court<br>Attn: Judge Michael A. Leversen<br>700 Civic Center Drive West<br>1st Floor<br>Santa Ana, CA 92701 |
| Orange County Alternate Defender<br>Attn: Randy Ladisky<br>600 W. Santa Ana Blvd., Suite 600<br>Santa Ana, CA 92701<br>(Trial Counsel) | |

I further declare I electronically served the following entities by TrueFiling:

SAN DIEGO ATTORNEY GENERAL, SDAG.Docketing@doj.ca.gov

APPELLATE DEFENDERS, INC., eservice-court@adi-sandiego.com

ORANGE COUNTY DISTRICT ATTORNEY, Appellate@da.ocgov.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on <u>February 23, 2022</u>

Server signature:

Cynthia M. Jones

---

[1] Appendix A and Appendix B omitted from copies served by mail other than on appellant.

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 1/14/2022 by Lori Pickrell, Deputy Clerk

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059259 |
| v. | (Super. Ct. No. 16CF1903) |
| ISRAEL GUTIERREZ ZAMORA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order and judgment of the Superior Court of Orange County, Michael A. Leversen, Judge. Order affirmed. Judgment reversed in part and remanded with directions.

Avatar Legal and Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Following his conviction on several charges, including attempted murder, kidnapping, and assault with a semiautomatic weapon, Israel Gutierrez Zamora filed a petition for disclosure of juror identifying information pursuant to Code of Civil Procedure section 237.[1] After denying the disclosure petition as untimely, the trial court sentenced Zamora to a total term of 98 years to life. Zamora then filed an appeal challenging the denial of his petition for disclosure; he also argued there were errors in his sentence and the abstract of judgment.

As a result of that first appeal, we reversed the order denying the petition, as well as the challenged aspects of the sentence and abstract, and remanded the case with directions. (*People v. Zamora* (Dec. 20, 2019, G055827) [nonpub. opn.]) (*Zamora 1*).) On remand, the court denied Zamora's disclosure petition on the merits, and corrected the sentence and abstract as directed.

Zamora now appeals from that second order which denied his disclosure petition, arguing that the court was statutorily required to release the identifying information for jurors who did not object to disclosure. We disagree. Section 237 obligates the court to release the information only if none of the jurors protest the disclosure. If any juror does object, the court must sustain the objection if it concludes the motion fails to show good cause for the release. That is what occurred in this case. Six of the twelve jurors objected to disclosure, which triggered the court's obligation to determine whether there was good cause for disclosure. After concluding there was not, the court properly denied the petition.

Zamora also challenges additional aspects of his sentence that were imposed when the court resentenced him following our remand. He argues he is entitled to the benefit of recent changes in the law that rendered certain sentence enhancements

---

[1]     All further statutory references are to this code unless otherwise designated.

2

imposed under Penal Code section 667.5 inapplicable to this case.   The Attorney General
concedes the point and agrees the challenged enhancements must be stricken, rather than
stayed.  We also agree and remand the case to the trial court with directions to strike
those sentence enhancements.

### FACTS

This is the second appeal arising from the trial court's denial of Zamora's
motion for disclosure of juror identifying information and alleged sentencing errors.
Because neither issue relates to the convictions themselves, we incorporate the brief
summary of facts underlying Zamora's convictions from our prior opinion.

"Zamora's charges were based on three separate incidents involving the
same victim, J. Hernandez.  In the first incident, Zamora and Hernandez were drinking
together and got into a fist fight.  During the fight, Zamora threatened Hernandez with a
gun and unsuccessfully attempted to force Hernandez into his car; Hernandez escaped.

"The second incident occurred a few months later, when Hernandez was
driving and Zamora walked into the street and began shooting at him, with several bullets
hitting Hernandez's car.  Hernandez crashed and took off running but Zamora followed
him and told him to get into his car.  Hernandez agreed, and the two of them spent the
rest of the day together.  Later that evening, Zamora threatened to kill Hernandez.

"The third incident occurred a few weeks later when Zamora went to
Hernandez's house and threatened to hurt Hernandez or his family if Hernandez talked to
the police." (*Zamora 1*, *supra*, G055827.)

Zamora was charged with nine counts.  The jury found him guilty on
counts 1 and 2 (attempted kidnapping and assault with a semiautomatic firearm); not
guilty on count 3 (assault with a deadly weapon—pliers or screwdriver); guilty on counts
4 and 5 (attempted murder and kidnapping); guilty on counts 6 and 7 (assault with a

firearm and shooting at an occupied motor vehicle); and guilty on counts 8 and 9 (criminal threats and dissuading a witness or victim by force or fear).

"On January 3, 2018 [two days before the continued sentencing hearing], Zamora filed a motion to disclose juror identifying information arguing that there was good cause to disclose the information based on a declaration by Zamora's sister. According to her declaration, 'during one morning break near the beginning of the trial, I overheard a female juror walking back into the courtroom state to another female juror, "let's just find him guilty so we can get this over with." The juror was laughing as she said it. The second female juror also laughed about it.'" (*Zamora 1, supra*, G055827.)

The trial court determined Zamora's motion for disclosure of juror identifying information was untimely and denied the motion on that basis without considering its merits; the court then proceeded with Zamora's sentencing. Zamora appealed from the court's conclusion his motion was untimely, and also argued the court made several errors relating to his sentence and the abstract of judgment.

In *Zamora 1*, we concluded the request for a disclosure order was not untimely and remanded the case to the trial court with directions to consider the request on the merits. (*Zamora 1, supra*, G055827.) We also instructed the trial court to modify the sentence and abstract of judgment and directed the court "to prepare amended minutes and an amended abstract of judgment consistent with all ordered changes. In all other respects the judgment is affirmed." (*Zamora 1, supra*, G055827.)

Following remand, the court informed counsel it intended to direct the jury commissioner's office to give notice to the trial jurors of the potential release of their personal information; the court then "ordered the Jury Commissioner's Office to send notice to the named jurors on the present case notifying them of the release of juror information pursuant to Code of Civil Procedure 237 and the hearing date of July 17, 2020 at 8:30 AM in Department C39."

4

The jury commissioner's letter informed jurors the court had made a
tentative decision to release their juror identification information to counsel for both
parties; the letter also told the jurors they had the right to object to the release, either
personally or in writing, pursuant to section 237, subdivision (c). The jurors were
informed of the date and time of the hearing at which the court would make the final
decision. Six of the jurors objected in writing to the disclosure of identifying
information.

The July 17 hearing was continued to July 28; on July 27, Zamora filed a
supplemental brief arguing that despite the objections of some jurors, he had made a
prima facie showing of good cause for disclosure of juror identification information. He
pointed out that aside from the specific content of the juror's statement, the fact that
jurors were discussing the case at all was misconduct—a direct violation of the court's
repeated admonition directing them not to do so.

The court read and considered Zamora's supplemental brief; it then denied
the petition. As the court explained at the hearing, "[f]or the court to release juror
information, among the things that the court has to find is that the alleged misconduct
must be of such a character as is likely to have influenced the verdict improperly. The
court does not so find." The court then explained that it is not uncommon for jurors to
joke with each other, and it is apparent from "their body language or what they say or
how they act, whether smiling or laughing," which is contrasted with what they look like
"as they're receiving evidence, whether they're bored or taking the evidence seriously."
The court viewed the comment described by Zamora's sister as "a casual comment by
one juror to another [that was] a joke about probably the amount of time that I told them
this case was going to take."

The court also pointed out that the jury had "asked for two separate
readbacks of the testimony, which indicates to me that they took their obligation seriously
and examined the evidence and the instructions of the court seriously." The court also

5

stated it believed the evidence in the case "was overwhelmingly towards guilt." Based
on those factors, "the court does not find that the defense has shown good cause and
refuses then to release the juror information."

## DISCUSSION

1.    *Governing Law*

For all cases in which the jury's verdict was returned on or after January 1,
1996, the right to obtain the jurors' personal identifying information is governed by
section 237.

Section 237, subdivision (a)(2), requires that after the verdict is recorded in
a criminal case, the trial jurors' "personal juror identifying information"—defined as their
names, addresses, and telephone numbers—shall be sealed. However, "[a]ny person may
petition the court for access to these records. The petition shall be supported by a
declaration that includes facts sufficient to establish good cause for the release of the
juror's personal identifying information." (§ 237, subd. (b).)

If the trial court finds that the moving party made a prima facie showing of
good cause, and if it finds no compelling interest against disclosure, it shall set the matter
for hearing. (§ 237, subd. (b).) The trial jurors are entitled to notice of the hearing, an
opportunity to "protest the granting of the petition," and an opportunity to appear.
(§ 237, subd. (c).)

If none of the jurors object to the petition for disclosure, the trial court must
grant disclosure following the hearing. However, if one or more jurors does object, the
court must sustain the protest(s) "if, in the discretion of the court, the petitioner fails to
show good cause, the record establishes the presence of a compelling interest against
disclosure as defined in subdivision (b), or the juror is unwilling to be contacted by the
petitioner." (§ 237, subd. (d).) Moreover, "[t]he court shall set forth reasons and make
express findings to support the granting or denying of the petition to disclose." (*Ibid.*)

Trial courts have broad discretion when ruling on a motion to release juror contact information. (*People v. Russell* (2017) 9 Cal.App.5th 1050.) The trial court's decision to deny such a request is reviewed for abuse of discretion. (*Id.* at p. 1059.)

2.    *The Court's Ruling on the Disclosure Motion*

Zamora argues the court abused its discretion by refusing to order disclosure of the juror identifying information for the six jurors who did not object to disclosure. According to Zamora, section 237 "only blocks the release of contact information for those jurors who object to release," and the plain language of the statute requires the court "to release the information of those jurors who did not object." Zamora misreads the statute.

Section 237, subdivision (b), requires the court to set a hearing, and notify the jurors, if the defendant makes a "prima facie" showing of good cause for disclosure, unless the court finds a compelling interest against disclosure. But that does not mean the court has made a finding that good cause exists. It is merely a determination that good cause potentially exists. "Prima facie evidence is that which will support a ruling in favor of its proponent if no controverting evidence is presented. [Citations.] It may be slight evidence which creates a reasonable inference of fact sought to be established but need not eliminate all contrary inferences." (*Evans v. Paye* (1995) 32 Cal.App.4th 265, 280-281, fn. 13; accord, *Anti-Defamation League of B'nai B'rith v. Superior Court* (1998) 67 Cal.App.4th 1072, 1098.)

The issue of whether good cause exists is ultimately resolved at the scheduled hearing. Subdivision (c) of section 237 states that "[a]ny affected former juror may appear in person, in writing, by telephone, or by counsel to protest the granting of the petition." A juror's objection is not limited to the disclosure of his or her personal information; rather, a juror's protest can support a denial of the petition in its entirety.

Following the hearing, the court must make the records available as requested in the petition "unless a former juror's protest to the granting of the petition is

7

sustained." (§ 237, subd. (d).) So, if no juror protests, the records shall be released as requested. However, where one or more jurors protest, the court is required to "sustain the protest" if the court determines "the petitioner fails to show good cause, the record establishes the presence of a compelling interest against disclosure as defined in subdivision (b), or the juror is unwilling to be contacted by the petitioner." (§ 237, subd. (d).)

Here, in response to the protests of six jurors, the court made a determination at the hearing that, when considered in the wider context of the trial, the evidence offered by Zamora did not show good cause for disclosure of the juror identifying information. That is precisely what the statute requires; we find no error.

Zamora relies on *Townsel v. Superior Court* (1999) 20 Cal.4th 1084, 1097, as well as this court's decision in *DeHoyos v. Superior Court* (2020) 50 Cal.App.5th 71, 82, for the proposition that the court cannot "unilaterally prohibit all contact" with jurors. Those cases are inapposite, as both involved cases in which the jury verdicts were returned long before the effective date of section 237, and both challenged the validity of juror "no contact" orders. There is no such order in place here. The court's denial of Zamora's petition for disclosure of the juror identifying information does not "prohibit all contact" with the jurors. It denies him access to sealed records.

Zamora does not make the additional argument that the court's rejection of his good cause argument under section 237 was an abuse of discretion. We consequently need not address that point. We nonetheless observe that, in addition to the facts highlighted by the court in its ruling, its conclusion is bolstered by the fact the jury found Zamora not guilty of count 3. That verdict is inconsistent with the contention that any juror chose to "find him guilty so we can get this over with."

3.    *Retroactively Unlawful Sentence*

Zamora also challenges several sentence enhancements. Specifically, Zamora explains that "[b]efore appellant's original sentence, the trial court found

8

appellant had suffered one prior felony conviction resulting in prison sentence pursuant to [Penal Code] section 667.5, subdivision (b), and found appellant had committed three prior violent felony convictions resulting in prison sentences pursuant to [Penal Code] section 667.5, subdivision (a). [Citation.] The prison priors resulted from convictions for remaining in the United States after deportation, making a criminal threat ([Penal Code] § 422), attempted robbery ([Penal Code] §§ 664, 211), and assault ([Penal Code] § 245). [Citations.] The court imposed but stayed a one-year enhancement along with three three-year enhancements in calculating appellant's third strike sentences on Counts 1, 2, 4, 6, 7, and 8."

Zamora acknowledges the one-year enhancement imposed (but stayed) under subdivision (b) of Penal Code section 667.5 was proper when initially imposed because the subdivision previously applied to any prior prison term that did not fall within subdivision (a). However, he correctly points out that the statute was amended effective January 1, 2020, to specify that the subdivision (b) enhancements would be imposed only where the prior prison term resulted from "'a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code.'" (§ 667.5, subd. (b).) That amendment applies retroactively to all defendants whose judgments were not yet final. (*People v. Herrera* (2020) 52 Cal.App.5th 982, 995.)

Because Zamora's prior prison term was not for a qualifying sexually violent offense as required under the amended version of Penal Code section 667.5, subdivision (b), he contends the one-year enhancement does not apply to this case and must be stricken as to all counts. Zamora also argues the three-year enhancements imposed (but stayed) under Penal Code section 667.5, subdivision (a), are unlawful and must be stricken because none of the prior convictions relied upon to support them was a violent felony as specified in subdivision (c) of the statute.

The Attorney General agrees with Zamora on both counts, and so do we.

## DISPOSITION

The order denying Zamora's petition for disclosure of juror identifying information is affirmed. We reverse the judgment in part and remand the matter to the trial court with instructions to strike the sentence enhancements that were imposed (but stayed) pursuant to Penal Code section 667.5, subdivisions (a) and (b), on counts 1, 2, 4, 6, 7, and 8. In all other respects the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

GOETHALS, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

ZELON, J.

*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Court of Appeal, Fourth Appellate District, Division Three
Kevin J. Lane, Clerk/Executive Officer
Electronically FILED on 1/26/2023 by Nettie De La Cruz, Deputy Clerk

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | G061537 |
| Plaintiff and Respondent, | (Super. Ct. No. 16CF1903) |
| v. | O P I N I O N |
| ISRAEL GUTIERREZ ZAMORA, | |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael A. Leversen, Judge.  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*    \*    \*

This is the third time Israel Gutierrez Zamora's case has come before us.

In a first amended information filed on March 20, 2017, Zamora was charged with nine felonies: count 1: attempted kidnapping (Penal code,[1] §§ 664, subd. (a), 207, subd. (a)); count 2: assault with a semiautomatic firearm (§ 245, subd. (b)); count 3: assault with a deadly weapon (§ 245, subd. (a)(1)); count 4: attempted murder (§§ 664, subd. (a), 187, subd. (a)); count 5: kidnapping (§ 207, subd. (a)); count 6: assault with a firearm (§ 245, subd. (a)(2)); count 7: shooting at an occupied vehicle (§ 246); count 8: criminal threats (§ 422(a)); and count 9: dissuading a witness by force or threat (§ 136.1, subd. (c)(1)).

In addition, the information alleged that, as to count 1, Zamora personally used a firearm (§ 12022.53, subd. (b)); as to counts 4 and 5, he personally discharged a firearm (§ 12022.53, subd. (c)); and as to counts 2, 6, 7, and 8, he personally used a firearm (§ 12022.5, subd. (a)). The information also alleged Zamora had suffered prior felony convictions.

In 2017, a jury convicted Zamora of all charges except count 3. The jury also rejected the firearm allegation related to count 5. The trial court sentenced Zamora to 98 years to life in prison. In an unpublished opinion in 2019 (*People v. Zamora* (Dec. 20, 2019, G055827) [nonpub. opn.] (*Zamora 1*)), we affirmed the convictions but remanded the case for resentencing.

The trial court thereafter resentenced Zamora; he again appealed. In 2022, this time in a published opinion, we affirmed the trial court's decision related to the release of juror identifying information, and again remanded the matter for resentencing (*People v. Zamora* (2022) 73 Cal.App.5th 1084) (*Zamora 2*)). On June 21, 2022, the parties submitted a stipulation to the trial court in which they agreed Zamora's sentence

---

[1]    All further statutory references are to the Penal Code unless otherwise noted.

of 98 years to life should be vacated, and he should instead be sentenced to no more than 64 years and 6 months to life. The court accepted the stipulation. At a new sentencing hearing, conducted the same day, the trial court sentenced Zamora to the maximum permitted pursuant to the stipulation—64 years and 6 months to life.

Zamora now appeals from that sentence.

We once again appointed counsel to represent Zamora on appeal. After conducting his analysis of potential appellate issues, appointed counsel informed us in his declaration that he had reviewed the entire record, and consulted with Zamora's trial counsel and a staff attorney at Appellate Defenders, Inc. Counsel then filed a brief pursuant to the procedures set forth in *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, suggesting he found no viable appellate issue. While not arguing against his client, counsel set forth the facts of the case and asked this court to conduct its own independent review of the appellate record. Counsel also advised Zamora of his right to file a written argument on his own behalf; he has not done so. Although defendant has not filed a supplemental brief, we exercise our discretion to conduct an independent review of the record. (*People v. Delgadillo* (2022) 14 Cal.5th 216, 232.)

## FACTS

Because this appeal does not relate directly to Zamora's convictions, we need only incorporate a brief summary of the underlying facts taken from *Zamora 1*.

"Zamora's charges were based on three separate incidents involving the same victim, J. Hernandez. In the first incident, Zamora and Hernandez were drinking together and got into a fist fight. During the fight, Zamora threatened Hernandez with a gun and unsuccessfully attempted to force Hernandez into his car; Hernandez escaped.

"The second incident occurred a few months later, when Hernandez was driving and Zamora walked into the street and began shooting at him, with several bullets

hitting Hernandez's car. Hernandez crashed and took off running but Zamora followed

him and told him to get into his car. Hernandez agreed, and the two of them spent the

rest of the day together. Later that evening, Zamora threatened to kill Hernandez.

"The third incident occurred a few weeks later when Zamora went to

Hernandez's house and threatened to hurt Hernandez or his family if Hernandez talked to

the police." *(Zamora* 1, *supra*, G055827).

## DISCUSSION

Although appellate counsel "urges no specific contentions as grounds for

relief," he suggests in his brief that we consider one issue: "Did the court abuse its

discretion by declining to strike any of the firearm enhancements without explanation?"

We have considered this issue and find it to be without merit. We find

nothing in the record to suggest the trial judge misunderstood the standards that applied

to Zamora's resentencing, or that he misapplied any applicable rule. As a result of his

familiarity with Zamora, his criminal history, and the facts of this case, the judge

apparently decided to give Zamora the full benefit of the stipulation entered into by the

parties, but nothing more. There is nothing in the record before us to suggest this

decision involved any abuse of discretion.

We have likewise examined the entire record in this case and, like counsel,

found no other arguable issue on appeal.

## DISPOSITION

The judgment is affirmed.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, P. J.


MOTOIKE, J.

# EXHIBIT "A"

1  THAT.  IT'S ALSO A LESSER INCLUDED OF COUNT 2.

2      THE COURT:  SO YOU'LL HAVE TO INCLUDE THAT IN THE

3  3517 INSTRUCTIONS ALSO IF YOU HAVEN'T ALREADY.

4          IT SAYS ON 3517 "ASSAULT IS A LESSER INCLUDED

5  OFFENSE OF ASSAULT WITH A FIREARM, WHICH IS A LESSER

6  INCLUDED OFFENSE OF ASSAULT WITH A SEMIAUTOMATIC

7  FIREARM, AS CHARGED IN COUNT 2."

8      MR. YOUNG:  I DON'T THINK I SAW THE ASSAULT WITH A

9  FIREARM INSTRUCTION ON ITS OWN.  I NEED TO ADD THAT.

10  I'LL DOUBLE-CHECK THAT OVER THE WEEKEND.  I THINK THAT

11  WOULD BE BAD.

12      THE COURT:  WHICH INSTRUCTIONS ARE YOU ASKING FOR?

13      MR. DOLNICK:  I HAVE A FEW OR MORE THAN A FEW, YOUR

14  HONOR.

15          I THINK THE NONCONTROVERSIAL ONE IS 3515,

16  MULTIPLE COUNTS, SEPARATE OFFENSES.  ADVISING THE JURY

17  THAT THEY NEED TO --

18      THE COURT:  YEAH, WE NEED THAT.

19      MR. YOUNG:  OKAY.

20      MR. DOLNICK:  THERE'S TWO SEPARATE INSTRUCTIONS TO

21  DISCUSS, VOLUNTARY INTOXICATION, ONE THAT'S RELATED TO

22  THE HOMICIDE AND ONE IS JUST A GENERAL DEFENSE OF

23  VOLUNTARY INTOXICATION.  WE'VE HAD EVIDENCE OF DRINKING

24  ON BOTH OFFENSES; SO I THINK IT'S APPROPRIATE.

25      THE COURT:  WHAT'S THE NUMBER?

26      MR. DOLNICK:  IT'S -- THERE'S 3426, WHICH IS SORT

```
 1   OF --

 2       MR. YOUNG:  WHICH COUNTS ARE YOU REQUESTING IT FOR?

 3       MR. DOLNICK:  THE SPECIFIC INTENT.

 4       MR. YOUNG:  ALL THIS IS GOING TO BE IN THERE?

 5       MR. DOLNICK:  YEAH.

 6       THE COURT:  YEAH.  I DON'T HAVE ANY PROBLEM WITH

 7   THAT.

 8            DO THE PEOPLE HAVE ANY PROBLEM WITH THAT?

 9       MR. YOUNG:  NO.

10       THE COURT:  WHAT ELSE?

11       MR. DOLNICK:  THE -- THE 3470 SERIES THAT TALK

12   ABOUT SELF-DEFENSE.  THERE'S SELF-DEFENSE, THERE'S

13   3471, MUTUAL COMBAT, AND 3472 THAT TALKS ABOUT

14   CONTRIVED.  I THINK WE'RE PUTTING AN ELEMENT IN THE

15   OFFENSES.  I THINK WE NEED THE SELF-DEFENSE

16   INSTRUCTIONS TO EXPLAIN TO THE JURY WHAT SELF-DEFENSE

17   IS.

18       THE COURT:  AS TO WHICH COUNTS?

19       MR. DOLNICK:  AS TO -- I THINK IT APPLIES TO COUNTS

20   1 --

21       THE COURT:  WHERE IS THE EVIDENCE ON THAT?

22       MR. DOLNICK:  I THINK THAT THE -- WELL, I THINK THE

23   EVIDENCE IS THAT THERE'S THIS FIGHT THAT HAPPENS INSIDE

24   THE GARAGE.  THERE'S EVIDENCE THAT EVEN BY JULIAN'S OWN

25   STATEMENTS THAT HE WAS ON TOP OF HIM, THAT HE'S BEATING

26   HIM UP AND HE'S WINNING THE FIGHT.  I THINK THAT IT --
```

1   AND BASED UPON THE INJURIES TO MY CLIENT, I THINK THAT

2   THE JURY CAN INFER THAT HE'S TAKING IT BEYOND A MUTUAL

3   COMBAT SITUATION.  I THINK THERE'S ENOUGH THERE FOR THE

4   JURY TO SAY, HEY, HE'S TAKING THIS TO A LEVEL THAT'S

5   BEYOND SIMPLE FISTICUFFS.  HE'S CAUSING SERIOUS INJURY

6   TO MY CLIENT, AND MY CLIENT HAS A RIGHT TO ELEVATE HIS

7   USE OF DEFENSE IN THAT SITUATION.  AND I THINK THAT'S

8   APPROPRIATE FOR THE JURY TO CONSIDER THAT.

9       THE COURT:  PEOPLE?

10      MR. YOUNG:  I'M NOT SURE ABOUT THAT.  I MEAN, I

11   HAVE TO THINK ABOUT THIS.

12      THE COURT:  I HAVE TO THINK ABOUT IT TOO BECAUSE

13   THE EVIDENCE IS, IN MY OPINION, AND I'M NOT THE JURY,

14   THE EVIDENCE IS THERE WAS MUTUAL COMBAT, MUTUAL COMBAT

15   ENDED, HE WENT TO HIS CAR AND GOT A GUN.

16         BUT MAYBE YOU CAN ARGUE THE OTHER WAY, AND IF

17   YOU CAN, WE SHOULD INSTRUCT ON THIS.

18         SO THINK ABOUT THAT OVER THE WEEKEND AND WRITE

19   IT DOWN.

20      MR. DOLNICK:  OKAY.

21      THE COURT:  AND I DO NOTICE THAT AT LEAST ONE OF

22   THE OTHER INSTRUCTIONS TALKS ABOUT SELF-DEFENSE AND WE

23   HAVEN'T DEFINED IT ANYWHERE.  SO IT MIGHT BE SOMETHING

24   THAT WE NEED TO DEFINE JUST SO THAT THEY UNDERSTAND

25   WHAT LEGAL SELF-DEFENSE IS RATHER THAN WHAT THEY THINK

26   STREET SELF-DEFENSE IS.

```
1        MR. YOUNG:  YES.

2        THE COURT:  WHAT ELSE?

3        MR. DOLNICK:  I THINK THAT'S ALL THAT I'M

4   REQUESTING AT THIS TIME.

5            I JUST WANTED TO POINT OUT IN THE PACKET TOO

6   WE DIDN'T GET THAT FAR, BUT I THINK WE NEED TO PULL

7   3530, WHICH IS JUDGE'S COMMENT ON THE EVIDENCE.

8        THE COURT:  I DON'T COMMENT ON THE EVIDENCE.  THOSE

9   ARE ONES THAT THE D.A. ALWAYS THROWS IN.  BASICALLY

10  AFTER THE ONE I TOLD YOU WHERE WE TALK ABOUT

11  DELIBERATIONS AND HOW THEY'RE TO APPROACH THAT TASK,

12  WHICH IS 3517, THE ONLY ONE I -- I DON'T GIVE -- SO

13  I'LL TAKE THAT ONE OUT, 3530.  I DON'T COMMENT ON THE

14  EVIDENCE.  AND THEN I LET YOU ARGUE, AND THEN I GIVE

15  3550 BEFORE THEY GO OUT, AFTER YOU ARGUE.

16       MR. DOLNICK:  OKAY.

17       THE COURT:  SO I THINK WE HAVE A GOOD START ON

18  THESE JURY INSTRUCTIONS AND WE KNOW WHERE THE PROBLEMS

19  MAY LAY AND WE CAN LOOK AT THEM OVER THE WEEKEND AND

20  HOPEFULLY BE READY BY 9:30 ON MONDAY MORNING.

21       MR. DOLNICK:  YES, SIR.

22       THE COURT:  SO, COUNSEL, WILL YOU PLEASE BE HERE AT

23  9:00.

24       MR. YOUNG:  DO YOU WANT TO DO 1118 AND MAKE YOUR

25  RECORD?  I'D ASK WE DO THAT SOONER RATHER THAN LATER.

26       MR. DOLNICK:  THAT'S FINE.
```

## 252. UNION OF ACT AND INTENT: GENERAL AND SPECIFIC INTENT TOGETHER

The crimes and or other allegations charged in Counts one through nine require the proof of the union, or joint operation, of act and wrongful intent.

The following crimes and allegations require general criminal intent:   Assault with a Semi-Automatic Firearm as charged in Count two;   Assault with a Firearm, as charged in Count six and a lesser included offense of count two; Assault with a Deadly Weapon as charged in Count three;   Assault, a lesser included of counts two, three and six; Kidnapping as charged in count five, False Imprisonment, and misdemeanor False Imprisonment; and the special allegation of Personal use of a Deadly Weapon as alleged in counts one, two, four, five, six, seven, eight.   For you to find a person guilty of these crimes, or to find the allegations true, that person must not only commit the prohibited act, but must do so with wrongful intent.   A person acts with wrongful intent when he or she intentionally does a prohibited act; however, it is not required that he or she intend to break the law.   The act required is explained in the instruction for that crime or allegation.

The following crimes and allegation require specific intent or mental state. Attempted Kidnapping as charged in count one and a lesser included offense of count five; Attempted False Imprisonment, and Attempted Misdemeanor False Imprisonment , both lessors of count one and count five; Attempted Murder as charged in count four; Attempted Voluntary Manslaughter, a lesser included offense of count four; Shooting at an occupied Vehicle as charged in count seven; Criminal Threats as charged in count eight, dissuading a witness as charged in count nine; and personal discharge of a firearm as alleged in count four and five.

The specific intent required for the crime of Attempted Kidnapping is the intent to kidnap.

The specific intent required for attempted false imprisonment is the intent to commit false imprisonment.

The specific intent required for attempted misdemeanor false imprisonment attempt to commit misdemeanor false imprisonment.

The specific intent required for the crime of Attempted Murder is the intent to kill.

The specific intent required for the crime of Attempted Voluntary Manslaughter is the intent to kill.

The specific intent required for the crime of Criminal Threat is the intent that the statement be understood as a threat.

The specific intent for the crime of attempted criminal threats is the intent to commit a criminal threat.

## 252. UNION OF ACT AND INTENT: GENERAL AND SPECIFIC INTENT TOGETHER

The specific intent required for the allegation of personal discharge of a firearm is the Intent to Discharge.

The mental state required for Dissuading a witness from causing arrest, is Maliciousness. The specific intent required is the intent to discourage or prevent a complaint from being filed.

The mental state required for the crime of Shooting at an Occupied Vehicle is Maliciousness.

## 3470  RIGHT TO SELF-DEFENSE

Self-defense is a defense to Assault with a Semi-Automatic Firearm, Assault with a Firearm, Assault with a Deadly Weapon, Assault, Attempted Murder.   The defendant is not guilty of those crimes if he used force against the other person in lawful self-defense. The defendant acted in lawful self-defense if:

1. The defendant reasonably believed that *he* was in imminent danger of suffering bodily injury;

2. The defendant reasonably believed that the immediate use of force was necessary to defend against that danger;

AND

3. The defendant used no more force than was reasonably necessary to defend against that danger.

Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was (imminent danger of bodily injury to himself. Defendant's belief must have been reasonable and he must have acted because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense.

When deciding whether the defendant's beliefs were reasonable, consider all the circumstances as they were known to and appeared to the defendant and consider what a reasonable person in a similar situation   with similar knowledge would have believed. If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

The slightest touching can be unlawful if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough. The touching does not have to cause pain or injury of any kind.

A defendant is not required to retreat. He or she is entitled to stand his or her ground and defend himself or herself and, if reasonably necessary, to pursue an assailant until the danger of death or bodily injury has passed. This is so even if safety could have been achieved by retreating.

The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of Assault with a

Semi-Automatic Firearm, Assault with a Firearm, Assault with a Deadly Weapon, Assault, Attempted Murder, respectively.

### 3471   RIGHT TO SELF-DEFENSE:  MUTUAL COMBAT OR INITIAL AGGRESSOR

A person who engages in mutual combat has a right to self-defense only if:

    1.  He actually, and in good faith tried to stop fighting;

AND

    2.  He indicated, by word or by conduct to his opponent, in a way that a reasonable person
       would understand that he wanted to stop fighting and he had stopped fighting;

AND

    3.  He gave his opponent a chance to stop fighting.

If the defendant meets these requirements, he then had a right to self-defense if the opponent continued
to fight.

A fight is mutual combat when it began or continued by mutual consent or agreement.  That agreement
may be expressly stated or implied and must occur before the claim to self-defense arose

However, if the defendant used only non-deadly force, and the opponent responded with such
sudden and deadly force that the defendant could not withdraw from the fight, then the
defendant had the right to defend himself with deadly force and was not required to try to stop
fighting, or communicate the desire to stop to the opponent, or give the opponent a chance to
stop fighting.

A fight is *mutual combat* when it began or continued by mutual consent or agreement. That
agreement may be expressly stated or implied and must occur before the claim to self-defense
arose.

3474.   DANGER NO LONGER EXISTS OR ATTACKER DISABLED

The right to use force in self-defens continues only as long as the danger exists or reasonably appears to exist.
[When the attacker (withdraws/ [or] no longer appears capable of inflicting any injury), then the right to use force
ends.]

359  CORPUS DELICTI:    INDEPENDENT EVIDENCE OF A CHARGED CRIME

The defendant may not be convicted of any crime based on his out-of-court statements alone. You may rely on the defendant's out-of-court statements to convict him only if you first conclude that other evidence shows that the charged crime or a lesser included offense was committed.

That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed.

This requirement of other evidence does not apply to proving the identity of the person who committed the crime. If other evidence shows that the charged crime or a lesser included offense was committed, the identity of the person who committed it may be proved by the defendant's statements alone.

You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt.

## 358. EVIDENCE OF DEFENDANT'S STATEMENTS

You have heard evidence that the defendant made an oral or written statements before the trial. You must decide whether the defendant made any of these statements, in whole or in part. If you decide that the defendant made such statements, consider the statements, along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statements.

Consider with caution any statement made by the defendant tending to show his guilt unless the statement was written or otherwise recorded.

317

## 315   EYEWITNESS IDENTIFICATION

You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony.

In evaluating identification testimony, consider the following questions:

Did the witness know or have contact with the defendant before the event?

How well could the witness see the perpetrator?

What were the circumstances affecting the witness's ability to observe, such as lighting, weather conditions, obstructions, distance, and duration of observation?

>How closely was the witness paying attention?

Was the witness under stress when he or she made the observation?

Did the witness give a description and how does that description compare to the defendant?

How much time passed between the event and the time when the witness identified the defendant?

Was the witness asked to pick the perpetrator out of a group?

Did the witness ever fail to identify the defendant?

Did the witness ever change his or her mind about the identification?

How certain was the witness when he or she made an identification?

Are the witness and the defendant of different races?

was the witness able to identify other participants in the crime?]

Was the witness able to identify the defendant in a photographic or physical lineup?]

Were there any other circumstances affecting the witness's ability to make an accurate identification

The People have the burden of proving beyond a reasonable doubt that it was the defendant who committed the crime. If the People have not met this burden, you must find the defendant not guilty.

SUPERIOR COURT OF CALIFORNIA

COUNTY OF ORANGE, NORTH JUSTICE CENTER

DEPARTMENT N11

THE PEOPLE OF THE STATE OF          )
CALIFORNIA,                         )
                                    )
            PLAINTIFF,              )
                                    )
      VS.                           )       CASE NO. 16CF1903
                                    )
ISRAEL GUTIERREZ ZAMORA,            )
                                    )
            DEFENDANT.              )
_____)

HONORABLE MICHAEL A. LEVERSEN, JUDGE PRESIDING

REPORTER'S TRANSCRIPT

(PAGES 954 THORUGH 962 SEALED *MARSDEN*
PROCEEDINGS UNDER SEPARATE COVER)

JANUARY 5, 2018

APPEARANCES OF COUNSEL:

FOR THE PEOPLE:      TONY RACKAUCKAS, DISTRICT ATTORNEY
                     BY:  WHITNEY BOKOSKY, DEPUTY

FOR THE DEFENDANT:   FRANK DAVIS, ALTERNATE DEFENDER
                     BY:  JEREMY D. DOLNICK, DEPUTY

WENDI J. VALLARINO, RPR, CRR, CSR NO. 9337
OFFICIAL COURT REPORTER

```
 1                  W I T N E S S   I N D E X

 2
                          JANUARY 5, 2018
 3
                                                        VOIR
 4    PEOPLE'S:            DIRECT CROSS REDIRECT RECROSS DIRE

 5
      (NONE)
 6

 7

 8

 9

10

11

12

13

14
                                                        VOIR
15    DEFENDANT'S:         DIRECT CROSS REDIRECT RECROSS DIRE

16
      (NONE)
17

18

19

20

21

22

23

24

25

26
```

```
 1                    E X H I B I T S

 2
                     JANUARY 5, 2018
 3
                                    FOR            IN
 4   PEOPLE'S EXHIBITS:         IDENTIFICATION   EVIDENCE

 5
     (NONE)
 6

 7

 8

 9

10

11

12

13

14
                                    FOR            IN
15   DEFENDANT'S EXHIBITS:      IDENTIFICATION   EVIDENCE

16
     (NONE)
17

18

19

20

21

22

23

24

25

26
```

```
 1            FULLERTON, CALIFORNIA; FRIDAY, JANUARY 5, 2018

 2                         MORNING SESSION

 3                            * * * * *

 4            (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN

 5     COURT:)

 6       THE COURT:  ON THE CASE OF PEOPLE VERSUS ISRAEL

 7     ZAMORA, 16CF1903.

 8            STATE YOUR APPEARANCES.

 9       MS. BOKOSKY:  WHITNEY BOKOSKY ON BEHALF OF THE

10     PEOPLE.

11       MR. DOLNICK:  JEREMY DOLNICK ON BEHALF OF

12     MR. ZAMORA, WHO IS PRESENT IN CUSTODY BEFORE THE COURT.

13       THE DEFENDANT:  GOOD MORNING, YOUR HONOR.

14       THE COURT:  GOOD MORNING, MR. ZAMORA.

15       THE DEFENDANT:  GOOD MORNING.

16       THE COURT:  OKAY.  THIS MATTER IS HERE FOR A NUMBER

17     OF THINGS.  MOTION FOR A NEW TRIAL OR MODIFICATION OF

18     THE VERDICT UNDER PENAL CODE SECTIONS 1181 AND 1182.

19     I'VE READ THE MOTION.

20            ANYTHING YOU WANT TO ADD?

21       MR. DOLNICK:  JUST ONE THING, YOUR HONOR.

22            AS THAT MOTION -- ONE OF THE THINGS I BELIEVE

23     I FAILED TO INCLUDE WAS I THINK THAT THE COURT, IN

24     CONSIDERING WHETHER OR NOT TO GRANT OR MODIFY THE

25     MOTION, WAS THERE WAS TESTIMONY OF DETECTIVE GARCIA

26     WHERE HE HAD MENTIONED THE FACT THAT MR. ZAMORA WAS
```

1    FACING OTHER CHARGES IN A SEPARATE CASE, AND HE SAID

2    THAT IN FRONT OF THE JURY.  IT WAS SOMETHING THAT HAD

3    BEEN PREVIOUSLY 402'D OUT THAT WASN'T SUPPOSED TO BE

4    MENTIONED.

5         I THINK IN LIGHT OF THE THINGS I ALREADY

6    MENTIONED IN MY MOTION, WHEN YOU TAKE THAT INTO

7    CONSIDERATION ALSO, IT'S THE TYPE OF THING WHERE, WITH

8    THESE TYPES OF FACTS WHERE A JURY COULD BE WEIGHING

9    WHAT TO BELIEVE AND NOT, AND THEN TO HEAR THAT

10   MR. ZAMORA WAS FACING OTHER CHARGES, I BELIEVE THAT'S

11   THE KIND OF THING THAT THE COURT CAN CONSIDER IN TERMS

12   OF WHY A NEW MOTION SHOULD BE GRANTED IN THIS CASE.

13      THE COURT:  PEOPLE WISH TO RESPOND?

14      MS. BOKOSKY:  NO, YOUR HONOR.

15      THE COURT:  ANYTHING ELSE ON YOUR MOTION FOR A NEW

16   TRIAL, MODIFICATION OF THE VERDICT?

17      MR. DOLNICK:  NO, YOUR HONOR.

18      THE COURT:  THE MOTIONS ARE DENIED.

19         THERE'S ALSO A MOTION PURSUANT TO 1385 TO

20   DISMISS OR STRIKE THE PRIOR ALLEGATIONS AND FIREARM

21   ENHANCEMENTS IN COUNTS 1 AND 2, 4, 6, AND 8.

22         DO YOU WISH TO BE HEARD ON THAT?

23      MR. DOLNICK:  NO.  I'LL SUBMIT ON MY BRIEF,

24   YOUR HONOR.

25      THE COURT:  PEOPLE ALSO SUBMIT?

26      MS. BOKOSKY:  YES.

1    THE COURT:  THAT MOTION IS DENIED.

2        LET'S SEE.  THERE'S ANOTHER MOTION THAT WAS

3    FILED YESTERDAY, IF I CAN FIND IT.  YES, HERE IT IS.

4    IT'S A MOTION PURSUANT TO -- WELL, A MOTION OF GOOD

5    CAUSE FOR REQUESTING RELEASE OF JUROR IDENTIFYING

6    INFORMATION.  I'VE READ YOUR MOTION.  I'VE READ THE

7    DECLARATION OF ELSA ZAMORA CERVANTES.

8        I NOTE THAT WE FINISHED THIS TRIAL IN MARCH OF

9    2017.  I GOT THIS MOTION YESTERDAY.  IT'S SUPPOSED TO

10   BE 20 DAYS' NOTICE.  THERE'S NOT 20 DAYS' NOTICE.

11   THERE'S NO REASON THIS MOTION COULDN'T HAVE BEEN

12   BROUGHT PRIOR THERETO.

13       ANYTHING ELSE YOU WANT TO ADD ON THIS?

14   MR. DOLNICK:  YES, YOUR HONOR.

15       I UNDERSTAND THE COURT'S CONCERN ABOUT THE

16   TIMING OF THE MOTION, AND I WISH I COULD HAVE BEEN IN A

17   POSITION TO FILE THAT SOONER.  UNFORTUNATELY, IT DID

18   TAKE ME SOME TIME TO GET THAT MOTION -- OR TO GET THE

19   DECLARATION SIGNED AND GET BACK TO ME.

20       HOWEVER, THE INFORMATION THAT'S CONTAINED

21   WITHIN THAT, I THINK, IS OF SERIOUS CONCERN THAT IF

22   THERE WERE JURORS THAT WERE DISCUSSING THINGS THAT THE

23   COURT TELLS THEM ON A DAILY BASIS, MULTIPLE TIMES A

24   DAY, THEY'RE NOT SUPPOSED TO BE DISCUSSING THAT IF THAT

25   IN ANY WAY AFFECTED THIS VERDICT AND AFFECTED THE

26   FAIRNESS OF THE TRIAL THAT WAS BEFORE MR. ZAMORA, THEN

1    I THINK IT IS SOMETHING THAT PERHAPS IS WORTHY OF AT

2    LEAST INQUIRING OF THOSE JURORS WHETHER THAT TOOK PLACE

3    AND HOW THAT COULD HAVE AFFECTED THE VERDICT IN THIS

4    CASE.

5        THE COURT:  PEOPLE WISH TO BE HEARD?

6        MS. BOKOSKY:  NO.

7        THE COURT:  THE MOTION IS DENIED.

8            ANYTHING ELSE WE NEED TO DO BEFORE WE PROCEED

9    TO SENTENCING?

10        MS. BOKOSKY:  NO.

11        MR. DOLNICK:  I'LL JUST BRING IT TO THE COURT'S

12    ATTENTION THAT PRIOR TO THE COURT TAKING THE BENCH,

13    MR. ZAMORA HAD DISCUSSED WITH ME THE POSSIBILITY OF

14    WANTING A *MARSDEN* HEARING BEFORE SENTENCING.  I DON'T

15    KNOW IF THE COURT WANTS TO INQUIRE OF MR. ZAMORA IF HE

16    WANTS THAT OR NOT.

17        THE COURT:  THAT'S SOMETHING YOU'RE MAKING A MOTION

18    FOR, MR. ZAMORA?

19        THE DEFENDANT:  YES, YOUR HONOR.

20        THE COURT:  ALL RIGHT.  SO THE DISTRICT ATTORNEY

21    WILL NEED TO LEAVE THE COURTROOM.

22            (IN CAMERA PROCEEDINGS PAGES 954 THROUGH 962

23    WERE SEALED BY ORDER OF THE COURT.)

24                        -OOO-

25

26

```
 1            (THE FOLLOWING PROCEEDINGS WERE HAD IN OPEN
 2    COURT:)
 3        THE COURT:  SO DO YOU WAIVE ARRAIGNMENT FOR
 4    JUDGMENT AND SENTENCING?
 5        MR. DOLNICK:  SO WAIVED.  NO LEGAL CAUSE.
 6        THE COURT:  DO YOU WISH TO BE HEARD OR PRESENT ANY
 7    ALLOCUTION STATEMENT?
 8        MR. DOLNICK:  I THINK THAT EVERYTHING THAT I WANTED
 9    TO SAY IS ALREADY IN MY SENTENCING BRIEF.
10            ALSO, I KNOW THE COURT DENIED MY ROMERO
11    MOTION, BUT IF THE COURT WILL CONSIDER THINGS I
12    MENTIONED IN THERE IN MITIGATION, I'D ASK THE COURT TO
13    DO THAT.
14            I DON'T KNOW IF MR. ZAMORA WANTS TO SAY
15    ANYTHING OR NOT.
16        THE COURT:  DID YOU WANT TO SAY ANYTHING?
17        THE DEFENDANT:  ALSO, YOUR HONOR, I -- I HAVE NEVER
18    SIGNED FOR STRIKES.  THE LAST TIME, THE SUPPOSEDLY
19    ATTEMPTED ROBBERY, THE REASON WHY I PLEADED GUILTY WAS
20    BECAUSE IT WAS A -- THEY TOLD ME IF I DON'T PLEAD
21    GUILTY TO IT AND IF I LOSE IT, BECAUSE THE -- THE KID
22    WAS GOING -- HE WAS GOING TO TRIAL.
23            SO THAT DAY I WAS AT MY -- TWO OF MY NIECES
24    SWEET 16 OVER THERE IN CORONA.  THERE'S A HALL THERE,
25    AND I WAS ALL DRUNK, YOUR HONOR.  AND I -- I WASN'T
26    FEELING GOOD, YOU KNOW, AND I JUST -- I JUST -- THERE
```

```
 1    WAS A BIKE ON THE FLOOR.  WHAT I DID, I PICKED IT UP.

 2         I TOLD THE KID, "IS THIS YOUR BIKE?  CAN I

 3    BORROW IT?"

 4         AND MY BROTHERS, THEY KNEW I WAS DRUNK.  THEY

 5    GRABBED ME, AND THAT'S WHEN THE POLICE OFFICERS CAME

 6    AND TOOK ME.

 7         BUT I'VE NEVER SIGNED FOR A STRIKE.  I TALKED

 8    TO ROLAND RUBALCAVA BASED ON THAT CASE, AND I NEVER

 9    SIGNED FOR A STRIKE ON THAT ONE.  IT WAS A 12. --

10    212.5, AND I NEVER -- I TOLD HIM, "I'LL SIGN, BUT I

11    WILL NOT -- NOT FOR A STRIKE," OR ELSE I WOULD HAVE

12    TOOK IT TO TRIAL.

13         HE GOES, "NO, YOU NEVER SIGNED FOR A STRIKE."

14         AND NOW IT'S -- ON THE -- ALSO, ON THOSE

15    TERRORIST THREATS, THOSE ARE WOBBLERS.  BACK IN 1999,

16    THEY NEVER TOLD ME THAT I'M SIGNING FOR A STRIKE.  I'VE

17    NEVER SIGNED FOR STRIKES, YOUR HONOR.

18       THE COURT:  THE RECORD SHOULD REFLECT THAT I'VE

19    READ THE PROBATION REPORT AND SENTENCING BRIEFS BY BOTH

20    COUNSEL, ANYTHING ATTACHED TO THE PROBATION REPORT,

21    WHICH WAS RECEIVED MAY 24, 2017, CONSISTING OF 22

22    PAGES.

23         IS THERE ANYTHING ELSE THAT'S BEEN SUBMITTED

24    THAT I HAVEN'T READ?

25       MS. BOKOSKY:  I DON'T KNOW IF THE COURT MENTIONED

26    MY SENTENCING BRIEF?
```

1    THE COURT:  I DID.

2    MS. BOKOSKY:  OKAY.

3    THE COURT:  BOTH SENTENCING BRIEFS I'VE READ.

4    MS. BOKOSKY:  NO, I DON'T THINK ANYTHING ELSE.

5    MR. DOLNICK:  NO, YOUR HONOR.

6    THE COURT:  ALL RIGHT.  THE COURT HAS ALREADY

7    INDICATED THAT IT'S NOT PREDISPOSED TO STRIKING

8    STRIKES.  I DON'T FIND ANY GOOD REASON TO STRIKE THEM.

9        THE PRIORS ALLEGED --

10        WELL, DO THE PEOPLE WISH TO PRESENT ANY

11    STATEMENTS, ANY -- DOES THE VICTIM WISH TO BE HEARD

12    OR --

13    MS. BOKOSKY:  NO, YOUR HONOR.

14        AS FAR AS I KNOW -- HAVING NOT BEEN THE TRIAL

15    ATTORNEY ON THIS CASE, I'M AT A DISADVANTAGE.  BUT AS

16    FAR AS I KNOW, THE VICTIM DOES NOT WANT TO BE HEARD,

17    DOES NOT WANT TO BE PRESENT FOR SENTENCING.

18    THE COURT:  ALL RIGHT.  THE PRIORS ALLEGED PURSUANT

19    TO 667(D) AND (E)(2)(A) AND 1170.12(B) AND (C)(2)(A)

20    WERE FOUND TO BE TRUE.  FOUR SUCH PRIORS WERE FOUND TO

21    BE TRUE.  THOSE FROM 01CF3349 ARE FOUND TO BE ARISING

22    FROM A SINGLE INCIDENT AND COURSE OF CONDUCT, WHICH

23    THAT ELEVATES THE VIOLENT OR SERIOUS FELONIES IN THIS

24    CASE TO LIFE SENTENCES.  THOSE PRIORS WERE ALLEGED AND

25    FOUND TO BE TRUE UNDER 667(A)(1), EACH CARRYING FIVE

26    YEARS.  THEY'RE FOUND TO BE TRUE.

1    ONE 667.5(B) PRIOR WAS ALLEGED AND FOUND TO BE

2    TRUE, WHICH CARRIES A ONE-YEAR ENHANCEMENT.

3    THE 667.5(A) PRIORS WERE ALLEGED AND FOUND TO

4    BE TRUE, AND THEY EACH CARRY A THREE-YEAR ENHANCEMENT,

5    BUT THEY WILL ALL MERGE PURSUANT TO 654.

6    THE DEFENDANT FALLS UNDER THE SENTENCING

7    PROVISIONS OF 667(E)(2)(A) MANDATING AN INDETERMINATE

8    TERM OF LIFE IMPRISONMENT WITH A MINIMUM TERM

9    CALCULATED ONE OF THREE WAYS, WHICHEVER IMPOSES THE

10    GREATEST TERM.

11    ALSO, PER 667(C)(6) REQUIRES CONSECUTIVE

12    SENTENCING FOR FELONIES NOT ON THE SAME DAY OR THE SAME

13    OPERATIONAL FACTS.

14    COUNSEL WISH TO BE HEARD WITH REGARD TO THAT

15    STATEMENT?

16    MR. DOLNICK:  I BELIEVE I ADDRESSED THAT IN MY

17    BRIEF.

18    THE COURT:  SO THEN STARTING WITH THE 8-21-15

19    INCIDENT, THE SHOOTING INTO THE VEHICLE, WHICH WAS

20    COUNT 4, THE 667-187 [VERBATIM], THE DEFENDANT WILL BE

21    SENTENCED TO LIFE IN PRISON WITH A MINIMUM TERM

22    CALCULATED PURSUANT TO 667(E)(2)(A), WHICH WOULD BE

23    NINE YEARS FOR THE 667-187; PLUS 20 YEARS FOR THE

24    12022.53(C) ENHANCEMENT; 15 YEARS, WHICH IS FIVE YEARS

25    EACH FOR THE 667(A) PRIORS, SO THAT'S 15 YEARS; ONE

26    YEAR FOR THE 667.5(B) PRIOR, WHICH WILL BE STAYED; AND

1  NINE YEARS, THREE YEARS EACH FOR THE 667.5(A) PRIOR,

2  WHICH ARE IMPOSED AND STAYED PURSUANT TO 654.  SO THAT

3  WOULD BE 43 TO LIFE.

4          WITH REGARD TO COUNT 5, THIS IS SHOOTING INTO

5  THE VICTIM'S CAR, THE 207(A), DEFENDANT IS COMMITTED

6  FOR LIFE WITH A MINIMUM TERM OF 25 YEARS.  THERE WAS A

7  NOT TRUE FINDING ON THE 12022.5(3)(C) WITH REGARD TO

8  THIS.  SO IT WOULD BE -- COURT FINDS THAT THE CRIME IN

9  COUNT 5 STEMMED FROM THE SAME OR CONTINUING COURSE OF

10 CONDUCT AS THE CONDUCT IN COUNT 4; THEREFORE, THAT

11 COUNT WILL 654.

12         WITH REGARD TO COUNT 6 AT THE APARTMENT

13 COMPLEX ON 8-21-15, THE 245(A)(2), DEFENDANT IS

14 COMMITTED FOR LIFE WITH A MINIMUM SENTENCE CALCULATED

15 AS FOLLOWS:  FOUR YEARS FOR THE 245(A)(2); 10 YEARS FOR

16 THE 12022.5(A); 15 YEARS FOR THE 667(A), THAT'S FIVE

17 YEARS EACH ON THE THREE PRIORS; ONE YEAR FOR THE

18 667.5(B) PRIOR, STAYED; AND FOR THE THREE 667.5(A)

19 PRIORS, NINE YEARS STAYED PURSUANT TO 654.  SO THAT

20 WOULD BE 39 YEARS MINIMUM, STAYED PURSUANT TO 654 FOR

21 COUNT 4.

22         8-21 INCIDENT AT THE APARTMENT COMPLEX, COUNT

23 7, WHICH IS THE 246, DEFENDANT IS COMMITTED FOR LIFE

24 WITH A MINIMUM TERM CALCULATED AS FOLLOWS:  FOR THE

25 246, SEVEN YEARS; FOR THE 12022.5(A), 10 YEARS; FOR

26 EACH 667(A) PRIOR, WHICH IS THREE, FIVE YEARS EACH, FOR

1    15 YEARS; FOR THE 667.5(B) PRIOR, ONE YEAR IMPOSED AND

2    STAYED; FOR THE 667.5(A) PRIORS, THERE'S THREE OF THEM,

3    THREE YEARS EACH, NINE YEARS IMPOSED AND STAYED

4    PURSUANT TO 654.  SO THAT WOULD BE A MINIMUM OF 33

5    YEARS IMPOSED AND STAYED PURSUANT TO 654 ON COUNT 4.

6           WITH REGARD TO THE INCIDENT AT MARISCOS FISH

7    HOUSE, COUNT 8, ON 8-21-15, 422, DEFENDANT IS COMMITTED

8    TO PRISON FOR LIFE WITH A MINIMUM TERM AS FOLLOWS:

9    THREE YEARS FOR THE 422; 10 YEARS FOR THE 12022.5(A);

10   FIVE YEARS EACH FOR THE THREE 667(A) PRIORS, WHICH IS

11   15 YEARS; THE 667.5(B) CARRIES A YEAR; AND THE 667.5(A)

12   CARRIES THREE YEARS EACH FOR THE THREE PRIORS, NINE

13   YEARS ON THE 667(A) TIMES THREE, SO THAT'S NINE YEARS

14   IMPOSED AND STAYED PURSUANT TO 654.  THE REMAINING

15   SENTENCE OF 29 YEARS TO LIFE IS TO RUN CONCURRENT TO

16   COUNT 4.  IT'S ON THE SAME DATE AND AROSE FROM THE SAME

17   SET OF CIRCUMSTANCES.

18          WITH REGARD TO COUNT 9, ON SEPTEMBER 15, 2015,

19   VIOLATION OF PENAL CODE 136.1, DEFENDANT IS COMMITTED

20   TO PRISON FOR LIFE WITH A MINIMUM TERM OF 25 YEARS TO

21   LIFE.  SINCE THE 136.1 DOES NOT OCCUR ON A SIMILAR DATE

22   OR ARISE FROM THE SAME COURSE OF CONDUCT, THE 25 YEARS

23   TO LIFE ON COUNT 9 IS CONSECUTIVE PURSUANT TO

24   667(C)(6).

25          WITH REGARD TO COUNT 1, JUNE 2, 2015, THE

26   664-207, DEFENDANT IS COMMITTED FOR LIFE WITH A MINIMUM

1    TERM CALCULATED AS FOLLOWS:  FOR THE 664-207, IT WOULD

2    BE ONE THIRD -- ONE HALF OF EIGHT YEARS, SO FOUR YEARS;

3    FOR THE 12022.53(B), ADDS 10 YEARS; 667(A) TIMES THREE

4    IS 15 YEARS; THE 667.5(B) IS A YEAR; AND THE 667.5(A)

5    THREE TIMES IS NINE YEARS.  THE 667.5(A) IS STAYED

6    PURSUANT TO 654.  THE 667.5(B) IS IMPOSED AND STAYED,

7    WHICH WOULD MANDATE ON THAT COUNT A MINIMUM TERM OF 29

8    YEARS TO LIFE, IF MY MATH IS CORRECT.  YES.

9          WITH REGARD TO THE JUNE 2 INCIDENT AT THE TOW

10   TRUCK, COUNT 2, THE 245(B), THE DEFENDANT IS COMMITTED

11   FOR LIFE WITH A MINIMUM TERM CALCULATED AS FOLLOWS:

12   FOR THE 245(B), NINE YEARS; FOR THE 12022.5(A), 10

13   YEARS; FOR THE THREE 667(A) PRIORS, 15 YEARS, FIVE

14   YEARS EACH; FOR THE 667.5(B) PRIOR, ONE YEAR IMPOSED

15   AND STAYED; FOR THE 667.5(A) PRIORS TIMES THREE, THREE

16   YEARS EACH, NINE YEARS, STAYED PURSUANT TO 654.

17          AND THE TOTAL TERM WOULD BE 34 YEARS, I

18   BELIEVE, STAYED PER 654.  THE 654 IS INTO COUNT 1.

19          SO DID ANYBODY CALCULATE ALL THE CONSECUTIVE

20   TIMES THAT HAVE BEEN --

21      MS. BOKOSKY:  DID WE GO TO -- DID WE DO COUNT 3

22   YET?

23      MR. DOLNICK:  YES.  THAT WAS A NOT GUILTY.

24      MS. BOKOSKY:  OH, IT WAS NOT GUILTY.  OKAY.

25      MR. DOLNICK:  DID YOU INDICATE ON THE RECORD THAT

26   COUNT 1, IS THAT A CONCURRENT OR CONSECUTIVE TO COUNT

1   4?

2     THE COURT:  I BELIEVE CONSECUTIVE.  IT'S NOT ON THE

3   SAME DATE.

4     MS. BOKOSKY:  97.

5     THE COURT:  THAT'S WHAT I THOUGHT.

6     MR. DOLNICK:  DO WE HAVE 34 -- OH, I TRANSPOSED TWO

7   NUMBERS.  I'M SORRY.

8     MS. BOKOSKY:  COUNT 4 --

9     MR. DOLNICK:  I HAD 34 WRITTEN DOWN, NOT 43.  MY

10   BAD.

11       THAT'S THE NUMBER I GET.

12     THE COURT:  ALL RIGHT.  THAT'S THE INDETERMINATE

13   SENTENCE.

14       PLUS A DETERMINATE SENTENCE OF FIVE YEARS FOR

15   EACH OF THE 667(A) PRIORS, 15 YEARS; ONE YEAR FOR THE

16   667.5(B) PRIOR, THAT'S STAYED, IMPOSED AND STAYED; AND

17   THREE YEARS FOR EACH OF THE 667.5(A) PRIORS, STAYED

18   PURSUANT TO 654.  SO IT'S 97 TO LIFE PLUS 15.

19       YOU'RE REMANDED -- PLUS, LET'S SEE WHAT THE

20   OTHER --

21       YOU ARE ORDERED TO PROVIDE BUCCAL SWAB

22   SAMPLES, FINGERPRINTS AS MANDATED BY LAW, AND A FULL

23   PALM PRINT IMPRESSION OF EACH HAND AND ANY BLOOD

24   SPECIMENS OR OTHER BIOLOGICAL SAMPLES FOR LAW

25   ENFORCEMENT ANALYSIS.  YOU WILL BE INCLUDED IN THE

26   STATE'S D.N.A. AND FORENSIC IDENTIFICATION DATABASE AND

1   DATA BANK PROGRAM.

2        THE COURT WILL IMPOSE A STATUTORY RESTITUTION

3   FINE IN THE AMOUNT OF $300, AND WILL IMPOSE AND STAY AN

4   IDENTICAL PAROLE REVOCATION FEE.  THIS STAY WILL BE

5   PERMANENT UPON SUCCESSFUL COMPLETION OF PAROLE.

6        ALL MANDATORY CRIMINAL COURT COSTS AND FEES

7   ARE HEREBY IMPOSED.  THESE ARE THE MANDATORY FEES.

8        DOES THE DEFENSE COUNSEL WAIVE RECITATION OF

9   THESE FEES?

10     MR. DOLNICK:  YES, YOUR HONOR.

11     THE COURT:  THE COURT ORDERS DEFENDANT TO PAY

12  DIRECT RESTITUTION TO THE VICTIM.

13        IS THERE ANY RESTITUTION?

14     MS. BOKOSKY:  YOUR HONOR, I WOULD JUST ASK THAT THE

15  COURT RETAIN JURISDICTION.  I HAVEN'T -- I DON'T HAVE A

16  NUMBER FOR THE COURT RIGHT NOW.

17     THE COURT:  ALL RIGHT.  I'M NOT SURE THERE WAS ANY,

18  BUT I WILL RETAIN JURISDICTION ON THIS CASE FOR THE

19  LIMITED PURPOSE UNTIL SUCH TIME AS RESTITUTION MAY BE

20  DETERMINED.

21     MS. BOKOSKY:  THANK YOU.

22     THE COURT:  I DON'T BELIEVE THERE'S ANY

23  REGISTRATION NECESSARY ON THIS CASE.

24        IF THERE WAS A FIREARM FOUND, IT'S ORDERED

25  DESTROYED.  COURT DECLARES IT A NUISANCE.

26        THE COURT FINDS DEFENDANT HAS NO ABILITY TO

1    PAY THE COSTS OF THE PROBATION REPORT.

2            THE COURT WILL NOT IMPOSE A FINE.

3            UPON RELEASE FROM PRISON, THE DEFENDANT WILL

4    BE ON PAROLE FOR A PERIOD OF TIME PRESCRIBED BY LAW.

5            DOES EITHER COUNSEL WISH TO BE HEARD ON THE

6    SENTENCE IMPOSED?

7        MS. BOKOSKY:  NO.

8        MR. DOLNICK:  YOUR HONOR, I'M JUST AT THIS POINT

9    TRYING TO CALCULATE HIS CREDITS.  I SHOULD HAVE THAT

10   FOR THE COURT MOMENTARILY.

11       THE COURT:  WELL, WHILE YOU'RE DOING THAT, I WILL

12   READ THE APPELLATE RIGHTS.

13           SIR, IT'S MY DUTY AT THIS TIME TO ADVISE YOU

14   OF YOUR APPEAL RIGHTS.

15           YOU HAVE THE ABSOLUTE RIGHT TO APPEAL FROM THE

16   JUDGMENT OF THIS COURT IN IMPOSING SENTENCE ON YOU

17   TODAY.

18           THAT MEANS, IF YOU WISH TO APPEAL, YOU MUST

19   FILE A WRITTEN NOTICE OF YOUR INTENTION TO APPEAL

20   WITHIN 60 DAYS FROM TODAY.  AN APPEAL NOT FILED WITHIN

21   60 DAYS SHALL BE VOID AND OF NO EFFECT.

22           THE NOTICE MUST BE IN WRITING AND SIGNED BY

23   YOU OR YOUR ATTORNEY OR BOTH OF YOU.  IT MUST SPECIFY

24   WHAT YOU ARE APPEALING FROM, WHETHER IT IS THE WHOLE

25   JUDGMENT OR JUST PART OF THE JUDGMENT.

26           IF YOU APPEAL AND DO NOT HAVE THE FINANCIAL

1    ABILITY TO RETAIN THE SERVICES OF AN ATTORNEY TO

2    REPRESENT YOU ON APPEAL, THE APPELLATE AUTHORITIES WILL

3    APPOINT COUNSEL TO REPRESENT YOU.

4            IN THAT REGARD, IT IS YOUR OBLIGATION TO KEEP

5    THE APPELLATE AUTHORITIES ADVISED AT ALL TIMES OF YOUR

6    CURRENT RESIDING ADDRESS SO THAT THEY CAN BE IN TOUCH

7    WITH YOU TO ADVISE YOU OF YOUR APPOINTED COUNSEL.

8            DO YOU UNDERSTAND YOUR APPEAL RIGHTS?

9        THE DEFENDANT:  YES, I DO, YOUR HONOR.

10       THE COURT:  ALL RIGHT.  WHAT YOU SHOULD DO IS ASK

11   MR. DOLNICK TO GET THAT FORM.  IT'S A SIMPLE FORM.  AND

12   IF YOU PLAN TO APPEAL, FILE IT QUICKLY SO THAT YOU KNOW

13   THAT IT'S DONE.

14       THE DEFENDANT:  MR. DOLNICK SAID HE WAS GOING TO DO

15   IT WITHIN -- TODAY OR A COUPLE OF DAYS.

16       THE COURT:  YEAH.

17       MR. DOLNICK:  I WILL.

18       THE COURT:  I JUST WANTED TO MAKE SURE THAT -- SO

19   YOU UNDERSTAND YOUR RIGHTS?

20       THE DEFENDANT:  YES, I DO, YOUR HONOR.

21       THE COURT:  I JUST WANTED TO MAKE SURE IT'S DONE

22   FOR YOU AND THAT IT GETS DONE, IT DOESN'T SLIP THROUGH

23   THE CRACKS.

24       THE DEFENDANT:  THANK YOU, YOUR HONOR.

25       THE COURT:  AND YOU HAVE CALCULATED HIS CREDITS?

26       MR. DOLNICK:  IF I CAN DOUBLE-CHECK TO MAKE SURE I

1    HAVE THIS CORRECT.  IT WILL TAKE ME TWO MORE SECONDS,

2    YOUR HONOR.

3        THE COURT:  NO HURRY.

4        THE DEFENDANT:  YOUR HONOR --

5        THE COURT:  YES, SIR.

6        THE DEFENDANT:  -- ALSO THERE WAS -- I DON'T KNOW

7    IF IT WAS SIX OR SEVEN OTHER CHARGES THAT MR. JULIAN

8    FLORES ACTUALLY -- REMEMBER THOSE -- THEY SCREWED WITH

9    THEM.

10       MR. DOLNICK:  HE'S REFERRING TO AT THE BEGINNING OF

11   THE TRIAL.  AMONG THE 402'S, I HAD REQUESTED THAT --

12   THERE WAS A NUMBER OF ACCUSATIONS THAT JULIAN FLORES

13   HAD MADE ABOUT ALLEGED DOMESTIC VIOLENCE THAT

14   MR. ZAMORA HAD MADE AGAINST HIS WIFE AND THINGS OF THAT

15   NATURE.

16       THE DEFENDANT:  AND THAT PERSON'S THERE, BUT

17   THEY'VE GOT TO GO INVESTIGATE HER AND -- AND SO THEY

18   COULD BRING IT TO THE COURTS SO SHE COULD SAY IF IT'S

19   TRUE WHAT THIS MAN IS SAYING.

20       THE COURT:  YOU KNOW, ALL THAT IS KIND OF BEHIND

21   YOU NOW.  IT WILL BE IN YOUR APPEAL AND YOU CAN BRING

22   THAT UP TO YOUR APPELLATE LAWYERS AND TALK TO THEM

23   ABOUT IT.  IF YOU BELIEVE MR. DOLNICK DID A

24   LESS-THAN-STELLAR JOB, THEN THEY CAN ATTACK THE WAY HE

25   PERFORMED HIS WORK ON THE APPEAL ALSO.  I THOUGHT HE

26   DID A PRETTY GOOD JOB.

1      THE DEFENDANT:  WELL, THERE WAS NO INVESTIGATION

2  DONE AFTER THE FACT THAT I LOST.

3      THE COURT:  WHEN YOU LOST, YOU LOST.

4      THE DEFENDANT:  EXCUSE ME, YOUR HONOR?

5      THE COURT:  I SAID AFTER YOU LOST, THERE'S NOT A

6  LOT OF INVESTIGATION THAT NEEDS TO BE DONE.

7      THE DEFENDANT:  WELL, THERE WAS NO INVESTIGATION

8  DONE PERIOD.  THEY STARTED INVESTIGATING AFTER, WHEN I

9  LOST.

10      THE COURT:  WELL, I KNOW.  YOU TOLD ME ALL THAT AND

11  WE'VE ALREADY BEEN THROUGH THAT.

12          SO WHAT ARE THE CREDITS?

13      MR. DOLNICK:  534 ACTUAL PLUS 80 GOOD TIME/WORK

14  TIME, WHICH IS DONE ON THE 15 PERCENT, WHICH COMES TO A

15  TOTAL OF 614.

16      THE COURT:  AND THE PEOPLE AGREE WITH THOSE

17  CREDITS?

18      MS. BOKOSKY:  SOUNDS GOOD.

19      THE COURT:  DID YOU GET THOSE?

20      THE CLERK:  I DID, YOUR HONOR.

21      THE COURT:  THOSE CREDITS ARE ORDERED THEN.

22          DEFENDANT IS REMANDED TO THE CUSTODY OF THE

23  SHERIFF TO BE TRANSPORTED FORTHWITH TO THE DEPARTMENT

24  OF CORRECTIONS.

25      MR. DOLNICK:  THANK YOU, YOUR HONOR.

26      THE COURT:  ALL RIGHT.  THAT CONCLUDES TODAY'S

1   SENTENCING HEARING.

2       (ADJOURNMENT.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



Israel Gutierrez Zamora #BM-2266
CSATF/SP CORCORAN, B1-6-7<sup>low</sup>
P.O. Box 5248
CORCORAN, California 93212

RECEIVED
CLERK, U.S. DISTRICT COURT
JUL - 3 2023
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

CLERK'S OFFICE, FOR THE
United States District Court,
CENTRAL DISTRICT OF CALIFORNIA
255 E. Temple Street, Room 180
Los Angeles, California 90012

CONFIDENTIAL
LEGAL MAIL